No. 22146.

JAMES E. DONNELLY *v*. ADA MAE DONNELLY.

(449 P.2d 350)

Decided November 18, 1968.    Rehearing denied February 3, 1969.

CARMEL A. GARLUTZO, GLENN G. SAUNDERS, for plaintiff in error.

EDISON and BERMAN, NORMAN E. BERMAN, for defendant in error.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THERE is involved here solely the matter of division of property in a divorce action. The parties appear here in the same order as in the district court. The plaintiff will be referred to as the doctor and the defendant as Mrs. Donnelly.

The complaint was filed on November 15, 1962 and on November 17, 1964 a divorce was granted to both parties. A hearing on division of property was held in May 1965, Mrs. Donnelly having waived alimony. Later the trial court made findings of fact, announced its conclusions of law and entered judgment. The judgment: (a) awarded Mrs. Donnelly specified furniture, furnishings, personal effects and other miscellaneous articles of personal property; (b) awarded to Mrs. Donnelly insurance policies in which she was the insured; (c) ordered Dr. Donnelly to pay all loans secured by some or all of these insurance policies; (d) further awarded to Mrs. Donnelly the "sum of $33,000 as and for her interest in and to the real and personal marital property acquired by the parties hereto."; (e) ordered Dr. Don-

nelly to save Mrs. Donnelly harmless from all of his indebtedness, some of which was represented by promissory notes signed by Mrs. Donnelly, and from any deficiencies under joint tax returns theretofore filed by the parties; (f) awarded to Dr. Donnelly the residence of the parties and all furniture except the articles specifically designated to Mrs. Donnelly; (g) awarded all other property to Dr. Donnelly. We find no reversible error in the judgment with the possible exception of the further award of $33,000.

The parties were married in February 1940, at which time the doctor was a physician and surgeon practicing at Trinidad, Colorado and Mrs. Donnelly was a registered nurse. Except during the doctor's service with the armed forces during World War II, he practiced there as a physician until at least the time of the May 1965 hearing. It appeared that at all times he made a comfortable income from his professional practice. During the early years of their married life Mrs. Donnelly was employed as a registered nurse, either in the doctor's office or elsewhere, devoting most of the compensation she received to family and the doctor's professional outlays. She assisted with the doctor's bookkeeping and billing throughout the marriage until their separation in November 1962.

In 1959 the doctor entered the cattle ranching business on a fairly substantial scale. He acquired two ranches having an aggregate of about 33,000 acres and ran about 1,300 head of cattle. Apparently he became heavily indebted at the inception of the ranching business and he sustained steady losses as time went on. On December 31, 1962 his indebtedness amounted to $911,766.70 and on October 27, 1964 it was $969,545.54.

The parties signed an agreement under date of November 13, 1962, under the provisions of which: Mrs. Donnelly acknowledged receipt of $2,000 from the doctor; it was agreed that each party should retain property solely in his or her name; and Mrs. Donnelly

waived all rights to alimony, joint tenancy property, all other property of the doctor and custody of their fifteen year old son. She contended at trial that she was coerced into signing it and the trial court so found. Apparently the only matters of substance which Mrs. Donnelly would have received under the agreement was the sum of $2,000 and a comparatively small equity in insurance policies on her life. The title to their residence may have been in joint tenancy, but all other property stood solely in the doctor's name. In the doctor's brief, major emphasis was placed upon the alleged error of the court in setting aside this property settlement agreement. Mr. Saunders entered the case after the briefs were filed and he made the oral argument. At that time he virtually abandoned this alleged error and made a statement to the effect that he could not in good conscience argue that the agreement should be upheld. We affirm the trial court in its ruling that the agreement was invalid but, in the light of the presentation to us on oral argument, we see no need to detail the circumstances surrounding the signing of the agreement.

■ There was no abuse of discretion in the award of the specific items of furniture, furnishings, personal effects, etc., to Mrs. Donnelly. No error was assigned to the portion of the judgment ordering the doctor to save Mrs. Donnelly harmless from the payment of indebtedness and in the motion for new trial no error was assigned to the court's order that he save her harmless from any deficiencies on joint income tax returns; and, therefore, the portion of the judgment with respect to these matters will not be disturbed.

■ The doctor contends that the award to Mrs. Donnelly was excessive and objects to the portion of the judgment which required the doctor to pay the loan made against Mrs. Donnelly's insurance policies. The proceeds of the insurance loans were applied upon the doctor's debts or invested in the doctor's livestock business. We cannot determine from the record the ag-

gregate amount of loans made on Mrs. Donnelly's policies. There were admitted in evidence documents showing that New Life Insurance Company loaned $7,412 on three of such policies. On oral argument it was stated that about $8,000 was borrowed upon the policies. At one point during the hearing on May 27 and 28, 1965 the doctor's attorney stated:

"* * * I should like to state in open court that all outstanding obligations in her name we will hold her harmless from the payment of those, she can have the three policies, and limit the thing to the condition as existed November 13, 1962. We will hold her harmless of the obligations she's on jointly."

This would indicate that the doctor stipulated that he would pay the policy loans. In any event, there was no abuse of discretion on the part of the trial court in ordering him to do so.

This leaves for consideration only the matter of the award to Mrs. Donnelly of the further sum of $33,000 "as and for her interest in and to the real and personal marital property acquired by the parties hereto." Since with some exceptions the effect of the judgment is to give all property to the doctor and an award of money to Mrs. Donnelly, the amount of the award must necessarily be an equitable portion of the doctor's net worth. Throughout the hearing, in the findings and conclusions and in the briefs, repeated reference was made to two balance sheets of the doctor's assets and liabilities prepared by the doctor's accountant, one as of December 31, 1962 and the other as of October 27, 1964. Neither of these balance sheets is among the exhibits certified to this court and our reading of the record fails to disclose that they were admitted in evidence or even identified as exhibits. Their absence has impeded our review and made our study of the record far more time consuming. There were appraisements of the parties' residence and of the assets of the livestock business. These were as of November 1962 and November 1964, but the appraised

values of the land and residence were the same during each of the two years. In the balance sheets the doctor's accountant used the figures of the appraisers for the respective years and, as to items not appraised, figures submitted by the doctor. The balance sheet as of the end of 1962 showed an excess of liabilities over assets of $64,788.42. The balance sheet of October 27, 1964 showed a deficit net worth of $196,699.41.

The trial court made no finding as to the proper time of the valuation, and the parties have not taken a position with respect to it. As the parties separated in November 1962, perhaps that is the proper time as of which the property division should be made. However, since the trial court has not passed on the matter, we are not going to determine whether this or November 1964, the month of entry of the divorce decree, is the appropriate time; and a determination of this must be made by the district court.

An appraiser placed a value of $14.50 per acre on the doctor's 32,998.64 acres of land but stated that the value would be $2 per acre more if it were not for the temporary drought condition that existed at the time of the appraisement. This testimony of the appraiser, Mr. Barrier, was the only evidence as to value of the land. The court did not state specifically that it found the value of the land to be $16.50 an acre, but we assume that it did by reason of the following portion of its conclusions of law:

"The balance sheets made by plaintiff's accountant, though honestly made by him, and showing an excess of the plaintiff's liabilities over his assets, are based on figures furnished to the accountant by the plaintiff and not verified by the accountant, and therefore subject to question in their ultimate conclusions. The appraisements furnished by Mr. Barrier, believed to be thoroughly honest, are, nevertheless subject to considerable doubt in the conclusions drawn, due to the fact that his valu-

ations were based in part on temporary drought conditions."

The doctor has not argued that it was error to use a figure of $16.50 per acre. In this connection he states only in his briefs:

"The court erred in refusing to accept the testimony concerning the values of the assets.

\* \* \*

"The defendant contends that the court did not attempt to fix value on the ranch property. If this be true, whether the court took the $14.50 per acre value or the $16.50 per acre value, the plaintiff was still insolvent at the time of the divorce decree."

With the matter being presented to us in this manner we hold solely for the purposes of this case that a finding on the part of the trial court of a value of $16.50 per acre was not improper.

The trial court stated in its findings and conclusions: "An airplane which the plaintiff had at the time of the separation and for which he paid a substantial sum, was disposed of at a sacrifice sale in 1963 or 1964, with the result that the plaintiff obtained $5,000 therefrom and the hospital association obtained $22,500 which was used by that association in paying back subscriptions which had been solicited previously to build a new hospital, but which was never accomplished.

\* \* \*

"The balance sheet furnished by the plaintiff's accountant does not take into consideration the disposal of the airplane at a 'give away' figure, the furniture in the home, the life insurance on plaintiff's life in the amount of $120,000, and approximately $59,000 in accounts receivable which were said by the plaintiff to be entirely worthless.

\* \* \*

"It appears to the court that it would be unconscionable to leave the defendant with only the $2,000, a car worth $150, and the personal property of relatively small value,

as result of her 22 years of married life with the plaintiff, and at the same time leave the plaintiff with the potentiality of considerable wealth as result of changed conditions in the very large holdings which he has and which were acquired during the marriage."

We believe the court misinterpreted the testimony with respect to the airplane. As we read it, a few years prior to 1964 the doctor purchased an airplane for $36,000. He apparently had considerable to do with the promotion of the James E. Donnelly Hospital and Clinic Association. Public subscriptions of $27,000 were collected for this and all of it expended for "bills," such as architects' fees. In 1964 he made a gift of the airplane to the Association, which sold it for $22,500. The doctor testified that $5,000 went to the Association, being the difference between the sales price and the amount "owed against it"; and that the $5,000 was used to pay bills. He further stated with reference to the airplane, "* * * what I had paid into it, I lost."

■ We have been unable to find the testimony upon which the court found that there were $59,000 in accounts receivable. The doctor testified that on November 13, 1962 his accounts receivable were, "I imagine around $30,000.00 or $35,000.00." Throughout his testimony he maintained that accounts receivable had no value until collected. The only other testimony pertaining to their value and found in the record was by Mrs. Donnelly who thought that not more than a fourth of the accounts receivable would be uncollectible. The court would have been justified in finding that the value of the doctor's accounts receivable was 75% of $35,000, or $26,250.

The "furnishings" in the house were appraised at $5,000. We assume that this is the same as "furniture in the house" quoted above from the court's findings.

■ There should be deducted from the doctor's net worth the amount of Mrs. Donnelly's insurance loans which he must pay.

■■■ Exclusive of the cash value of the doctor's life insurance and using assumed values for furniture, the equity in the airplane, the accounts receivable and the amount of loans against Mrs. Donnelly's insurance, the doctor's net worth as of November 1962 was $28,958.86 computed as follows:

| | | |
|---|---|---:|
| | November 1962 net worth deficit given by accountant | $ (64,788.42) |
| Add: | 33,998.64 acres at $2 per acre | 65,997.28 |
| | Equity in airplane (assumed value) | 5,000.00 |
| | Accounts receivable (assumed value) | 26,250.00 |
| | Furniture less that awarded to Mrs. Donnelly (assumed value) | 4,500.00 |
| | | 36,958.86 |
| Less: | Insurance loans (assumed amount) | 8,000.00 |
| | | $ 28,958.86 |

If the evaluation time is November 1962, without any evidence as to the value of some of the property, and particularly the cash value of the life insurance, it was an abuse of discretion to award Mrs. Donnelly the further sum of $33,000. *Menor v. Menor,* 154 Colo. 475, 391 P.2d 473; *Bell v. Bell,* 150 Colo. 174, 371 P.2d 773. It was improper for the court to predicate this further award upon "the potentiality of considerable wealth as a result of [future) changed conditions in the very large holdings which he has and which were acquired during the marriage." A trial court must follow the evidence and cannot speculate as to the future. *Menor v. Menor, supra.*

If the district court adopts November 1962 as the time as of which the property division should be made, it should use the net worth deficit figure of $64,788.42 (with possible addition of the aforementioned sum of $65,997.28) as that represents the only evidence of asset values and amounts of liabilities with respect to the items disclosed in the missing 1962 balance sheet. Then the court should: (a) Hear such further evidence as

may be necessary to establish the following as of November 1962:

The value of the equity in the airplane; the amount of the loans on Mrs. Donnelly's insurance policies; the cash value of the doctor's insurance; and the value of furniture retained by the doctor less the value of that awarded to Mrs. Donnelly;

(b) determine from testimony already received or from further testimony the value of the doctor's accounts receivable in November 1962; (c) determine the doctor's net worth as of November 1962; (d) make an award to Mrs. Donnelly based upon an equitable division of the net worth so determined.

The doctor's net worth was $131,910.99 less on October 27, 1964 than it was two years previously. It appears impossible for him to have had anything but a negative net worth at the time the divorce decree was entered. Therefore, if the latter date is the correct one as of which the property division is to be made, Mrs. Donnelly will not be entitled to any further award.

The judgment is affirmed except as to the further award of $33,000 and the cause is remanded for further proceedings consonant with the views herein expressed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE PRINGLE and MR. JUSTICE KELLEY not participating.