Opinion by
Mr. Chief Justice McWilliams.
This writ of error is directed to a summary judgment for $5,000 entered by the trial court in favor of one Earl G. Ross against the International Service Insurance Company, a stock insurance company with home offices in *454 Fort Worth, Texas. Earl G. Ross will hereinafter be referred to as Ross, and the International Service Insurance Company will be referred to as the Company. The judgment here sought to be reversed was entered in an action brought by Ross against the Company to enforce a so-called common law arbitration award. The background of the present controversy is a very tangled one, and a rather lengthy recitation thereof is deemed essential to an understanding of the matter.
On April 23, 1963 Ross was riding as a passenger in a vehicle owned and being then operated by one James C. Berger. On that particular occasion the Berger driven vehicle collided in an intersection in Colorado Springs with another vehicle. The driver of the other vehicle involved in this collision was one Jerry Rowell Walker. As a result of this collision Ross thereafter brought suit against Walker in the District Court of Pueblo County for the damages allegedly sustained by him in the aforesaid accident and in this proceeding a default judgment was subsequently entered on November 6, 1963 against Walker in the amount of $12,500.
Apparently Walker was an uninsured motorist. As of the date of the accident, however, the Company did have in effect a certain policy of insurance theretofore issued by it to Berger, the driver of the vehicle in which Ross was riding as a passenger when the above described accident occurred. It is this policy of insurance which forms the basis for the present controversy and accordingly reference thereto will be made at this juncture. The following then are the several provisions in the policy issued Berger by the Company which have possible bearing on the present dispute, although these various policy provisions are not here set forth in the precise order in which they appear in the policy:
“II. Definitions:
(a) Insured: The unqualified word “insured” means:
❖ * sf* *
*455 (2) any person while occupying an insured automobile;
•!* ^ 't' $
“In consideration of the payment of the premium for this endorsement, the Company agrees with the named insured, subject to the limits of liability, exclusions, conditions and other terms of this endorsement and to the applicable terms of the policy.”
“1. Damages for Bodily Injury Caused by Uninsured Automobiles: To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called “bodily injury,” sustained by the insured, caused by an accident and arising out of the ownership, maintenance of use of such uninsured automobile; provided, for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.” (Emphasis added.)
* * * *
“6. Arbitration: If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement, then upon written demand of either the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself *456 bound and to be bound by any award made by the arbitrators pursuant to this endorsement.”
* * * *

“This endorsement does not apply:

t'fi í¡: *
“(b) to bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which such insured, his legal representative or any person entitled to payment under this endorsement shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor.”
“2. Proof of Claim; Medical Reports: As soon as practicable, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall submit to examination under oath by any person named by the company, and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.”
“The injured shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require and he, or in the event of his incapacity his legal representative, or in the event of his death his legal representative or person or persons entitled to sue therefor, shall upon each request from the company execute authorization to enable the company to obtain medical reports and copies of records.
“3. Notice of Legal Action: If before the company makes *457 payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury against any person or organization legally responsible for the use of an automobile involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative.”
“5. Other Insurance: With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this endorsement, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this endorsement exceeds the sum of the applicable limits of liability of all such other insurance.
“With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this endorsement for a greater proportion of the applicable limit of liability of this endorsement than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.
“Subject to the foregoing paragraphs, if the insured has other similar insurance available to him against a loss covered by this endorsement, the company shall not be liable under this endorsement for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss.”
On or about July 9, 1964 Ross filed with the Commercial Arbitration Tribunal of the American Arbi *458 tration Association a Demand for Arbitration and caused a copy of such demand to be served on the party with whom he sought arbitration, namely the Company. In response to such demand the Company filed with the American Arbitration Association an answer. In its answer the Company set up four so-called defenses, all of which were said to be asserted “without waiving any rights available to the respondent [the Company] to refuse to recognize the right to arbitrate.” As its first defense the Company alleged that Ross was not entitled to arbitration because of the exclusion clause set forth above. As a second defense, the Company alleged that Ross had failed to comply with the provisions in the policy regarding proof of claim and medical reports, also set out above. In its third defense the Company made reference to the provisions in its policy concerning “Other Insurance,” and alleged that Ross had insurance with a St. Paul Insurance company covering his loss and asked that said company be made a party to the arbitration. And for its fourth and last defense the Company flatly asserted that “The American Arbitration Association has no jurisdiction of this cause.”
In reply to the Company’s answer to his demand for arbitration, Ross filed a reply wherein he asked that each of the Company’s four defenses be “stricken or dismissed” because none stated a defense to his demand.
In his reply Ross affirmatively alleged that he had in fact furnished written proof of claim to the Company and that he had at all times been willing to comply with the proof of claim and medical examination provisions of the Company’s policy of insurance. As concerns so-called “other insurance” Ross admitted that he had uninsured motorist coverage on his own automobile with the St. Paul Mercury Insurance Company, but stated that the policy provided for excess coverage only.
In relation to his action against Walker, Ross alleged in’his reply that on September 5, 1963 he had advised the Company of the institution of his action against *459 Walker and had forwarded to the Company a copy of the summons and complaint theretofore served on Walker. Also, according to Ross’s reply, he thereafter sought the Campany’s consent to take judgment against Walker. In this regard, however, Ross went on to allege in his reply that the Company in writing declined to grant its permission for Ross to take a default judgment against Walker “at this time.” Thereafter, according to the reply, Ross advised the Company as to when he proposed to appear in the Pueblo District Court and take default judgment against Walker and that on the appointed date he did obtain default judgment against Walker in the sum of $12,000, at which time and place neither Walker nor the Company appeared. Finally, it was alleged in the reply that Ross advised the Company of the fact that he had obtained a default judgment against Walker, had offered “to discuss a possible out-of-court settlement,” but that- subsequent negotiation faded to bring about a settlement of the matter and hence his demand for arbitration.
- Thereafter an arbitration hearing was held in connection with the aforesaid dispute between Ross and the Company. Whether a record of the arbitration proceeding was made is a bit uncertain. At least no transcript- of such proceeding is contained in the record before us. However, the record does contain -the' award of the arbitrator, in fact it contains two such awards!
■ On- December 2, 1964 the arbitrator entered an award denying Ross’s claim against the'Company. In so doing tfie arbitrator found that: (1) the default judgment entered in favor of Ross against the uninsured motorist was not binding on the Company; (2) “no medical evidence of-damage binding on the.... [Company] was presented to this tribunal [the arbitrator] ....”; and (3) the medical expenses to be paid by the Company under the insurance policy of “Ross- with the Company are not properly a part of this case.”
Thereafter Ross, being- dissatisfied with the award *460 of the arbitrator, filed an action purportedly brought under Rule 106(a) against the arbitrator in the Pueblo District Court and that court entered an order that the arbitrator show cause why his award should not be set aside. It is to be noted that this action was against the arbitrator alone, and the Company was not a party to the proceeding. In his complaint Ross alleged, among other things, that a “grave injustice” has been done him by the award of the arbitrator, and that in so doing the arbitrator had exceeded his jurisdiction, abused his discretion and was guilty of gross mistake or “disregard of duty.” Thereafter a motion for a change of venue was granted and this matter was transferred to the El Paso district court.
By answer the arbitrator alleged, among other things, that under the terms and provisions of the Company’s insurance policy the award of the arbitrator was binding on the parties thereto and that the award being “regular on its face” the court was without authority to review the award or alter or modify it.
When this matter came on for trial, no evidence was presented by either party, though the trial court did listen to the arguments of counsel. Thereafter, the court On May 14, 1965 made certain findings and conclusions of its own and proceeded to enter a judgment that “this matter be remanded to the defendant and Arbitrator to determine the amount of... [Ross’s] damages as shown by the exhibits.” In support of its judgment the court found as follows: (1) the default judgment obtained by Ross against Walker was not binding on the Company; (2) that under the “facts and circumstances of this case” the taking of the default judgment by Ross would not prevent him from proceeding under the arbitration clause of the Company’s policy; and (3) the finding by the arbitrator that “no medical evidence of damage binding on respondent was presented to this tribunal” is arbitrary, capricious and a gross mistake.
Thereafter, on August 18, 1965 the arbitrator sued out *461 a writ of error from this court directed to the El Paso District Court and its judgment overturning the arbitrator’s award and in connection therewith made application for supersedeas and stay of execution. In response thereto Ross filed a motion to dismiss based on the ground that the judgment sought to be reviewed was not a final judgment. Briefs were filed in this Court, both in support of and in opposition to, Ross’s motion to dismiss, and on September 30, 1965 this court granted the motion to dismiss and dismissed the writ of error.
Thereafter, on November 18, 1965, the arbitrator ostensibly acting pursuant to the remand to him of the arbitration dispute by the El Paso District Court, without making any findings or offering any explanation summarily entered an award ordering the Company to pay Ross the sum of $5,000. It would appear that the arbitrator entered this particular award without notice to the Company and without any additional evidence being offered by either Ross or the Company.
On January 4, 1966 Ross filed in the Pueblo- District Court a complaint against the Company in which his claim for relief was based on the arbitration award of November 18, 1965. In response thereto the Company first filed a motion seeking a change of venue from Pueblo to El Paso- County. This motion was denied.
By answer the Company then admitted that its dispute with Ross was ultimately submitted to an arbitration, but denied that the arbitrator “had any power in said controversy.” As concerns the arbitrator’s purported award of November 18, 1965, the Company denied “that said order was of any force and effect.” By way of additional and affirmative defenses, the. Company alleged that it was not a “proper party” to any arbitration because of the failure of Ross to comply with certain provisions of the policy here under consideration, namely the provisions above referred to relating to exclusions, and other insurance. Alternatively, the Company alleged that the arbitrator’s purported award of November 18, *462 1965 was a nullity and that the arbitrator’s award of December 2, 1964 “was binding and conclusive on all concerned and should bé given full force and effect.”
In response to the Company’s answer, Ross filed an elaborate motion to strike. After argument the trial court granted Ross’s motion to strike and struck from the answer all of the additional and affirmative defenses referred to above.
Ross then filed a motion for summary judgment, alleging therein that there was no genuine issue of fact and that he was entitled to judgment as a matter of law. The trial court upon hearing granted Ross’s motion for summary judgment, holding that “all disagreements of the parties ... have now been settled by arbitration ... and are merged in the said November 18, 1965 award of said arbitrator, as aforesaid.” Judgment was then entered in favor of Ross and against the Company in the amount of $5,000, interest and certain costs, and by this writ of error the Company seeks reversal of the judgment thus entered.
The first matter urged here is that the judgment should be reversed because of the alleged error of the trial court in denying the Company’s motion for a change of venue from Pueblo County and presumably to El Paso County. As above indicated, the Company is a non-resident of Colorado, having been organized in Texas and maintaining its home offices in Fort Worth. And though Ross himself is an El Paso resident, he instituted his action in the district court for Pueblo County. The Company was thereafter served by virtue of service of a summons and complaint on the Commissioner of Insurance for the State of Colorado.
 R.C.P. Colo. 98 (c) provides that where the defendant is a non-resident of Colorado, the action may be tried in the county designated in the complaint. Here the county designated in the complaint is Pueblo County, and hence we perceive no error in the trial court’s denial of the Company’s motion for change of venue. See in this *463 connection New York Life Co. v. Pike, 51 Colo. 238, 117 P.899.
The Company next argues that the summary judgment entered by the trial court must be reversed because of the alleged error of the trial court in striking the several defenses which were asserted by the Company in its answer and which have been above referred to. We will first consider those defenses sought to be raised by the Company which relate to the alleged failure of Ross to comply with the provisions of the policy relating to exclusions, proof of claim and medical reports and other insurance.
It is the Company’s basic position that it has not yet been afforded an opportunity to raise these various defenses and that such may properly be raised when, as here, an action is brought to enforce the arbitration award. In support of its position the Company cites such cases as Rosenbaum v. American Surety Company of New York, 183 N.E. 2d 667, and Murtaugh v. American States Insurance Co., 187 N.E. 2d 518.
As concerns this particular point, it is Ross’s position that these very matters were raised by the Company in the answer filed by it in the arbitration proceeding; that by his reply issues of fact bearing on each of these matters were very clearly raised; and that these matters, among many others, were thereafter “merged” in the ultimate award of the arbitrator, namely, the November 18, 1965 award.
 Arbitration clauses are said to be of two types: (1) the unlimited arbitration clause requiring arbitration of any and all disputes arising out of a contract; and (2) a limited arbitration clause providing for the arbitration of specific types of disputes arising out of a contract. Williston on Contracts, Revised Edition, volume 6, section 1924, p. 5383. In Rosenbaum v. American Surety Company of New York, supra, unlimited and limited clauses are referred to as being “general” or “particular” arbitration clauses respectively.
*464 In the instant case the arbitration clause in the insurance policy is a particular or limited clause, as the policy provides for the arbitration of two fact issues only, namely, the issue as to whether the insured is “legally entitled” to recover damages from the uninsured motorist and, if he is, then the additional issue as to the amount of the insured’s damages. In other words, under the arbitration clause in the insurance contract issued by the Company, if the insured and the Company fail to agree that the insured is legally entitled to recover damages from the uninsured motorist, of if they cannot agree on the amount of the insured’s damages, then those matters and those matters only are to be determined by arbitration. The policy does not provide for or require arbitration of other matters which may be in dispute between the insured and the Company concerning the latter’s policy of insurance. So, the insurance policy does not require that the issues sought to be raised by the Company in the trial court concerning Ross’s alleged failure to comply with the provisions in the policy pertaining to exclusions, proof of claim and medical reports, and so-called other insurance, be submitted to arbitration.
Such does not mean, however, that the Company and the insured could not agree to submit to arbitration these other matters in dispute between them, even though the insurance contract did not require it.
From the record before us it is impossible to tell with certainty whether the Company’s defenses relating to exclusions, proof of claim and medical reports, and other insurance were actually submitted to arbitration and thereafter covered by the award. The answer filed by the Company in the arbitration proceeding would seem to indicate that the Company was submitting these several matters to arbitration. Such a conclusion tends to be fortified by the reply thereafter filed by Ross in response to the Company. However, the award of the arbitrator contains no findings in connection with any. of *465 these particular matters which suggests that these matters may have been withdrawn from the arbitration proceedings before the actual commencement thereof. All of which simply indicates that from the record before us, which incidentally does not contain a record of the proceedings before the arbitrator, we cannot tell with certainty whether these matters were actually before the arbitrator and merged in his award. Such being the state of the record, the trial court was precipitous in summarily striking these defenses from the Company’s answer and in so doing it committed error.
Similarly, in our view the trial court erred in striking from the Company’s answer the defense that it was the arbitrator’s award of December 2, 1964 denying Ross’s claim which was “binding and conclusive on ah concerned” and that the arbitrator’s purported order of November 18, 1965 was of no “force and effect.”
In this general connection both Ross and the Company agree that under well-established Colorado law an arbitration award is not subject to judicial review merely because a party to the proceeding is dissatisfied with the award, and that it is not to be judicially reviewed even though the arbitrator may have committed a “mistake,” be it a mistake of fact or law. On the contrary, it is agreed that in Colorado an arbitrator is the final judge of both the law and the fact, and his award is final in the absence of fraud or similar misconduct. People ex rel Kimball v. Crystal Corp., 131 Colo. 163, 280 P.2d 429; Twin Lakes Co. v. Rogers, 112 Colo. 155, 147 P.2d 828; Western Oil Fields, Inc. v. Rathbun, 250 F.2d 69; and Gaddis Mining Co. v. Continental Materials Corp., 196 F. Supp. 860.
As concerns this particular matter, it is Ross’s position that the first award of the arbitrator was properly subject to review inasmuch as, according to Ross, such review was predicated upon “misconduct” of the arbitrator, misconduct presumably based on fraud or bad faith; whereas the defenses sought to be raised by *466 the Company to the second award of the arbitrator are not based on fraud or misconduct, and hence, says Ross, were properly stricken. On the basis of the record now before us we do not see how these issues could be resolved on any summary judgment basis triggered by the striking of this particular defense from the Company’s answer. This defense should not have been stricken, as it presents a matter which must be more fully explored by the trial court, both as to pertinent facts and the applicable law.
The further suggestion is also made by Ross that the Company is now somehow estopped from even contending that the award of December 2, 1964 is the only true award of the arbitrator and in this regard it is said that the Company is now precluded from in any manner challenging the judgment entered by the District Court of El Paso County which vacated the arbitrator’s award and remanded the matter to the arbitrator with the direction that he determine the amount of Ross’s damages. It should be noted that the Company was not a party to the proceedings in the district court of El Paso County wherein that court vacated the award of December 2, 1964. Be that as it may, on the state of the record now before us this matter of estoppel cannot in our view be resolved in the summary manner in which the trial court sought to dispose of this controversy.
In short, the trial court on the state of the record before it should not have stricken any of the defenses above referred to. Such being the case, it necessarily follows that the motion for summary judgment was also improvidently granted.
Nothing contained herein should be construed as indicating what the ultimate disposition of this controversy should be. Our holding is merely that the trial court should not have stricken the defenses above referred to and should not have granted a summary judgment in favor of Ross.
The judgment is reversed and the cause remanded *467 for further proceedings consonant with the views herein expressed.
Mr. Justice Pringle, Mr. Justice Kelley and Mr. Justice Lee concur.