**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Petitioner–Appellee, Cross–Appellant,**

v.

**CABS, INC., a Colorado corporation, d/b/a Zone Cab Company, Respondent–Appellant, Cross–Appellee.**

**No. 86SA124.**

Supreme Court of Colorado,
En Banc.

Feb. 22, 1988.

Creamer, Seaman & Levy, P.C., Marc R. Levy, Donald R. Brockus, Thomas J. Marrese, Englewood, for petitioner-appellee, cross-appellant.

Madden and Strate, P.C., Robert J. Carlson, Wheat Ridge, for respondent-appellant, cross-appellee.

ROVIRA, Justice.

Cabs, Inc., d/b/a Zone Cab Company (Zone), appeals an order of the district court confirming an arbitration award entered against it, claiming that the statute authorizing the arbitration is unconstitutional. State Farm Mutual Automobile Insurance Company (State Farm) cross-appeals, alleging that the district court erred in allowing Zone to present substantive defenses to confirmation of the arbitration award. Although under the Uniform Arbitration Act (U.A.A. or Act), §§ 13–22–201 to –223, 6A C.R.S. (1987), Zone's objections regarding the authority of the arbitrators to address a given dispute may be raised before the district court in a proceeding for vacating an award, Zone is time-barred by the statute from raising its substantive defenses. Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

This case arose from an automobile accident in November 1981, between a private automobile driven by Thomas Doddato and a taxicab owned by Zone. State Farm was Doddato's no-fault insurer. As a result of the accident, the Gonzales family, passengers in Doddato's vehicle, suffered injuries. The Gonzaleses received medical treatment and other benefits pursuant to Doddato's personal injury protection (P.I.P.) coverage with State Farm.

Zone, a taxicab company regulated and licensed by the Colorado Public Utilities Commission, operates non-private passenger motor vehicles on a for-hire basis. Zone is self-insured for no-fault benefits up to a $25,000 limit of coverage, and thereafter has umbrella coverage with a liability insurer. At the time of the accident, Zone maintained a certificate of self-insurance as provided for under section 10–4–716, 4A C.R.S. (1987).

In 1981 the Colorado No–Fault Statute, §§ 10–4–701 to –723, 4 C.R.S. (1973), provided a cause of action, enforceable by arbitration proceedings, under which State Farm could recover P.I.P. benefits paid the Gonzaleses "against the owner, user, or operator of the non-private passenger motor vehicle, or against any such person or organization legally responsible for the acts or omissions of such owner, user, or operator...." *See* § 10–4–713(2), 4 C.R.S. (1980 Supp.). No similar right of subrogation was available against owners or users of private passenger motor vehicles.[1] Thus, at the time of the accident, Zone was responsible for maintaining insurance or self-insurance adequate to provide no-fault benefits to its passengers, but was also potentially liable for P.I.P. benefits paid the Gonzales family by State Farm.

State Farm demanded arbitration against Zone, through the Denver Arbitration Committee (Committee), seeking an award of its

---

1. The General Assembly amended this portion of the statute effective January 1, 1985, by changing the definition of "private passenger motor vehicle" to include the type of motor vehicles operated by Zone. *See* "An Act Concerning Mandatory Motor Vehicle Insurance," ch. 303, sec. 7, § 10–4–713(2), 1984 Colo.Sess. Laws 1072 (codified at § 10–4–713(2)(c), 4 C.R.S. (1985 Supp.)).

subrogated interest for payment on its policy for those injured in an accident in a private passenger vehicle, pursuant to section 10–4–713(2), 4 C.R.S. (1980 Supp.), and section 10–4–717(1)(a) and (b), 4 C.R.S. (1973 & 1980 Supp.).[2] Zone did not participate in the arbitration proceeding, other than to request a continuance and file a statement with the Committee in which it took the position that the Committee did not have jurisdiction over it because section 10–4–713(2) was unconstitutional.

On March 27, 1985, the Committee entered an award against Zone in the amount of $24,686.78. On that same date, notice of the award was sent to Zone. State Farm filed a petition in Denver District Court on September 27, 1985, requesting an order confirming the arbitration award, pursuant to section 13–22–213, 6A C.R.S. (1987). Zone moved to dismiss under C.R.C.P.

12(b)(1) and (5) alleging that the Committee lacked subject matter jurisdiction and that the petition failed to state a claim upon which relief can be granted. Zone argued that the statute under which the Committee asserted its jurisdiction is unconstitutional and therefore, any resulting award is void.[3]

In response, State Farm alleged: (1) that the U.A.A. does not permit the filing of a C.R.C.P. 12(b) motion in response to a petition to confirm an arbitration award; (2) Zone cannot assert its substantive defenses to confirmation of the award because it failed to request a stay of arbitration, or to move to vacate or amend the award within the time limits provided in the U.A.A.; and (3) the challenged statute is constitutionally valid.

Following a hearing the district court confirmed the arbitration award and ruled

2. At the time of the accident, section 10–4–713(2), 4 C.R.S. (1980 Supp.), stated in relevant part:

Notwithstanding the provisions of subsection (1) of this section, where a motor vehicle accident involves a private passenger motor vehicle and a nonprivate passenger motor vehicle, the insurer of the private passenger motor vehicle shall have a direct cause of action for all benefits actually paid by such insurer under section 10–4–706(1)(b) to (1)(e) against the owner, user, or operator of the nonprivate passenger motor vehicle, or against any person or organization legally responsible for the acts or omissions of such owner, user, or operator; except that, when the injured person could recover in tort pursuant to section 10–4–714, such direct cause of action shall be to only the extent of the alleged tort-feasor's insurance coverage in excess of reasonable compensation paid to the injured person for such person's injury or damage by the alleged tort-feasor's insurer. For the purposes of this subsection (2), a "private passenger motor vehicle" means an automobile of the private passenger, station wagon, or camper type, not used as a public or livery conveyance, or an automobile of the panel delivery or truck type with a rated load capacity of one thousand five hundred pounds or less.

At the time of the accident, section 10–4–717(1)(a) and (b), 4 C.R.S. (1973 & 1980 Supp.), read in relevant part:

**Inter-company Arbitration.**

(1) Every insurer licensed to write motor vehicle insurance in this state shall be deemed to have agreed, as a condition to maintaining such license after January 1, 1974:

(a) that, where its insured is or would be held legally liable under the provisions of section 10–4–713(2) for the benefits paid by another insurer, described in section 10–4–706(1)(b) to (1)(e), it will reimburse such other insurer to the extent of such benefits but not in excess of the amount of damages so recoverable for the type of loss covered by such benefits and only to the extent of the alleged tort-feasor's insurance coverage in excess of reasonable compensation paid to the injured person for such person's injury or damage by the alleged tort-feasor's insurer; and

(b) that the issue of liability for such reimbursement and the amount thereof shall be decided by mandatory, binding inter-company arbitration procedures approved by the commissioner. If either insurer in such an arbitration proceeding also has provided coverage to the same policy holder for collision or upset arising out of the same occurrence, such insurer shall also submit the issue of recovery of any payments thereunder to the same mandatory and binding arbitration as provided in this section.

3. Zone's constitutional argument is that by, in effect, exempting companies owning non-private passenger vehicles for hire and regulated by the P.U.C. from the no-fault statute and allowing subrogation against them, without treating private passenger vehicles in the same manner, the legislation set up an arbitrary and capricious classification that denies Zone the equal protection of the laws in violation of the Colorado Constitution.

against State Farm on its procedural objections. In the words of the court: "[I]t just seems that the court could not confirm the order of arbitration if the statute upon which the claim arose is unconstitutional."

As to Zone's constitutional argument the court agreed with the parties that the rational basis test is the appropriate standard by which to judge the statute's unconstitutionality. Next, it found that the distinction between vehicles for hire and private passenger vehicles is a valid and reasonable one. Finally, the court found that there is clearly a rational relationship between the classification and a legitimate state interest in putting "some kind of ceiling on the cost that would be borne by the voters of this state ..." and that a way to do that would be to "delete from the no-fault bill those kinds of vehicles which are generally regulated anyway and which rely upon fares to make money," thereby "limiting some of the expenses to the insurance companies." The court denied Zone's motion to dismiss, granted State Farm's petition to confirm, and entered judgment against Zone in the amount of $24,686.78 plus costs.

Zone now appeals to this court claiming that the trial court erred in holding section 10–4–713(2), 4 C.R.S. (1980 Supp.), constitutional.[4] State Farm cross-appeals contending that the court erred in considering Zone's substantive arguments relating to the statute's constitutionality, because Zone failed, as required by the U.A.A., § 13–22–214(2), 6A C.R.S. (1987), to raise an objection to the arbitration award within ninety days after receiving notice of the award.

## II.

The parties present differing starting points for the analysis. Zone suggests that the constitutionality of the no-fault statute at issue, § 10–4–713(2), is the logical starting point. In the absence of a contractual agreement to arbitrate, jurisdiction to arbitrate between the parties can only be con-

ferred by statute, specifically, section 10–4–717. Zone argues that if the statute giving rise to the claim for legal liability, § 10–4–713(2), is unconstitutional, then the arbitrators would not be empowered to hear this dispute, any award granted would be void, and the trial court would be deprived of subject matter jurisdiction.

But arbitration in the instant case was based not on any agreement, but on statutory provisions which make fully applicable provisions of the U.A.A. for the resolution of certain disputes. Zone did maintain a certificate of self-insurance, and qualifies as a self-insurer under section 10–4–716. Zone is, therefore, an insurer under the provisions of the no-fault act. *See* § 10–1–102(8), 4A C.R.S. (1987). According to section 10–4–717(1)(a) and (b), 4 C.R.S. (1973 & 1980 Supp.), where the insured is or would be held legally liable under the provisions of section 10–4–713(2), "the issue of liability for such reimbursement and the amount thereof shall be decided by mandatory, binding inter-company arbitration procedures approved by the commissioner." Thus, the statute specifies that once a claim for legal liability under section 10–4–713(2) becomes established, issues of reimbursement and the amount thereof shall be addressed by arbitration, making fully applicable the provisions of the U.A.A.

Once its provisions come into play, the U.A.A. imposes a self-contained procedural apparatus, with provisions for challenging an arbitrator's exercise of power. If properly taken advantage of, the statutory scheme outlined in the U.A.A. would have enabled Zone to place its substantive concerns before the district court. But by failing to move for an order vacating the award within the statutory time limits, Zone, in effect, waived its right to object to confirmation of the arbitration award.

C.R.C.P. 1(a), which deals with the scope of the civil rules of procedure in various judicial proceedings, states in relevant part:

---

**4.** This case is properly before this court pursuant to sections 13–4–102(1)(b) and 13–4–

110(1)(a), 6A C.R.S. (1987).

These rules govern the procedure in the supreme court, court of appeals, district court and superior courts and in the juvenile and probate courts of the City and County of Denver, in all actions, suits and proceedings of a civil nature, whether cognizable as cases at law or in equity, and in all special statutory proceedings, with the exceptions stated in Rule 81 [C.R.C.P.].

C.R.C.P. 81(a) goes on to state that "[t]hese rules do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute."

In interpreting C.R.C.P. 81(a), we have held that the rules of civil procedure do not apply where there is a special statutory proceeding which sets forth remedies (and the rules of civil procedure are inconsistent or in conflict therewith). *Brown v. Hansen,* 177 Colo. 39, 493 P.2d 1086 (1972); *City of Westminster v. District Court,* 167 Colo. 236, 447 P.2d 537 (1968); *Wright v. Tinsley,* 148 Colo. 258, 365 P.2d 691 (1961). Arbitration is a special statutory proceeding, and the U.A.A. sets out in precise detail the rules which apply concerning confirmation of an arbitration award, and the methods by which a party may request the court to vacate or modify such an award. It was on the basis of C.R.C.P. 81(a) that we declared in a case involving a possible conflict between the U.A.A. and the rules of civil procedure that "it is questionable whether the court had the authority to deviate from the mandatory directives of the [U.A.A.] (by applying C.R.C.P. 42(a) and ordering consolidation)." *Judd Construction Co. v. Evans Joint Venture,* 642 P.2d 922, 926 (Colo.1982). *Judd* cautions against the use in special statutory arbitra-

tion proceedings of motions and other procedural mechanisms appropriate for the regular course of civil litigation, as offensive to the statutory scheme embodied in the U.A.A.

The U.A.A. was adopted in this state in order to establish a statutorily based scheme of arbitration. The stated purpose of the Act is to "validate voluntary written arbitration agreements, make the arbitration process effective, provide necessary safeguards, and provide an efficient procedure when judicial assistance is necessary." § 13–22–203, 6A C.R.S. (1987).[5]

■ When a question of the arbitrability of a particular dispute or issue arises, resolution of that question is, in the first instance, a matter for determination by the arbitrators. *Youmans v. District Court,* 197 Colo. 28, 31, 589 P.2d 487, 489 (1979). Here, Zone raised the issue of the unconstitutionality of section 10–4–713(2) by properly presenting its claim to the arbitration panel. But it then had the further obligation, under the U.A.A., to appeal any unfavorable decision to the district court by means of a motion to vacate or modify the award.

Section 13–22–213, 6A C.R.S. (1987), provides that "[u]pon application of a party, the court shall confirm an award, unless within the time limits imposed in this part 2 grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 13–22–214 and 13–22–215." The meaning of this provision is clear. The only permitted defenses to a request for confirmation of an arbitration award are those outlined in sections 214 and 215, and they must be made within specified time limits.[6]

**5.** Arbitration provides an efficient, convenient alternative to litigation, and it has long been the policy of this state to encourage the use of arbitration as a method of dispute resolution. *Judd,* 642 P.2d at 924; *Columbine Valley Construction Co. v. Bd. of Directors,* 626 P.2d 686, 690 (Colo.1981); *Cohen v. Quiat,* 749 P.2d 453 (Colo.App.1987); *Red Carpet Armory Realty v. Golden West Realty, Inc.,* 644 P.2d 93, 94 (Colo. App.1982). *See also* Colo. Const. art. XVIII, § 3 ("It shall be the duty of the General Assembly to pass such laws as may be necessary and

proper to decide differences by arbitrators ...").

**6.** Section 13–22–215 provides:

**Modification or correction of award.** (1) Upon application made within ninety days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

(a) There was an evident miscalculation of figures or an evident mistake in the descrip-

Under section 13–22–214, the court shall vacate an award, upon proper application of a party, where:

I. The award was procured by corruption, fraud, or other undue means; II. There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; III. The arbitrators exceeded their powers; IV. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefore or refusing to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 13–22–207, as to prejudice substantially the rights of a party; or V. There is no arbitration agreement and the issue was not adversely determined in proceedings under section 13–22–204 and the party did not participate in the arbitration hearing without raising the objection.

Finally, section 13–22–216, 6A C.R.S. (1987), provides that "[u]pon the granting of an order confirming, modifying, or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree."

■ The issues before a court in a confirmation proceeding are limited to a consideration of whether grounds exist to vacate, modify, or correct an arbitration award under the provisions of the U.A.A. See § 13–22–213; Judd, 642 P.2d at 924.

In the absence of such grounds, the language of the U.A.A. is mandatory: "The court *shall* confirm the award." § 13–22–213 (emphasis added). Moreover, once an award has been confirmed, modified, or corrected, section 13–22–216 mandates that judgment shall be entered and enforced.[7]

■ Under the U.A.A., Zone had the opportunity to raise the issue of constitutionality pursuant to section 13–22–214(1)(a)(III). That provision specifies that a party may raise as a ground for vacating an arbitration award that the "arbitrators exceeded their powers." Although this court has not had the occasion to construe the meaning of that phrase, it surely encompasses the constitutional challenge raised by Zone. Just as a portion of an arbitration award which goes beyond the matters submitted to the arbitrator for resolution is void for lack of jurisdiction, *Lynch v. Three Ponds Co.*, 656 P.2d 51, 53 (Colo.App.1982), so too would an arbitration panel be acting in excess of its powers were it to hear a dispute between private parties and thereby affect their legal relations, all the while drawing upon the authority of an unconstitutional statute. Even if the district court had rejected Zone's constitutional arguments and issued an order confirming the award, Zone could still have appealed such an order pursuant to section 13–22–221, 6A C.R.S. (1987).[8]

---

tion of any person, thing, or property referred to in the award;

(b) The arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(c) The award is imperfect in a matter of form, not affecting the merits of the controversy.

(2) If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as to modified and corrected. Otherwise, the court shall confirm the award as made.

(3) An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

This section has no application to the instant case.

7. Under both the U.A.A. and the common law, an arbitration award is tantamount to a judg-

ment, and is entitled to be given such status by a court sitting in review. *Judd*, 642 P.2d at 924, citing *Columbine Valley Construction Co.*, 626 P.2d 686. *See also International Service Insurance Co. v. Ross*, 169 Colo. 451, 465, 457 P.2d 917, 924 (1969) ("an arbitration award is tantamount to a judgment, and in Colorado an arbitrator is the final judge of both the law and the fact").

8. Section 13–22–221, 6A C.R.S. (1987), provides that:

**Appeals.**

(1) An appeal may be taken from: (a) an order denying an application to compel arbitration made under section 13–22–204; (b) an order granting an application to stay arbitration made under section 13–22–204(2); (c) an order confirming or denying confirmation of an award; (d) an order modifying or correcting an award; (e) an order vacating an award

Here, Zone failed to apply for an order vacating the award within ninety days after delivery of a copy of the award, as is required under section 13–22–214(2).[9] The language of the statute is mandatory: "An application under this section *shall* be made within ninety days after delivery of a copy of the award to the applicant...." (Emphasis added.) Since Zone failed to follow the procedures outlined in the U.A.A. for vacating an award, Zone should have been barred from presenting its substantive defenses to confirmation of the arbitration award. Zone's failure to appeal the unfavorable ruling of the arbitrators by means of a section 13–22–214 application to vacate within ninety days of the delivery of the award denies it the use of a forum to challenge the potentially excessive exercise of the arbitrators' powers.[10]

The arbitration statutes of other jurisdictions have similar time limits, and their courts have also held that arbitration awards shall be confirmed where parties presenting various defenses to confirmation of an arbitration award have not done so within the statutory time limits. In such cases, the parties have not been able to present their substantive defenses and the awards have been confirmed. *See, e.g., C.W. Jackson & Assoc., Inc. v. Brooks,* 46 Md.App. 63, 415 A.2d 640 (1980); *Schroud v. Van C. Argiris & Co.,* 78 Ill.App.3d 1092, 34 Ill.Dec. 428, 398 N.E.2d 103 (1979); *Levy v. Allstate Ins. Co.,* 63 A.D.2d 982, 406 N.Y.S.2d 109 (1978); *Wacker v. Allstate Ins. Co.,* 312 Minn. 242, 251 N.W.2d 346 (1977); *Nick–George Ltd. Partnership v. Ames–Ennis, Inc.,* 279 Md. 385, 368 A.2d 1001 (1977); and *Trustees of Boston & M. Corp. v. Massachusetts B.T.A.,* 363 Mass. 386, 294 N.E.2d 340 (1973). In an analogous case, where a party opposing an arbitration award had alleged that the panel exceeded its authority, and therefore lacked subject matter jurisdiction (a proper statutory defense to confirmation), an Illinois appellate court nevertheless held that the award must be confirmed and the parties bound when the contesting party failed to file a timely motion to vacate the award—even though the matter should never have gone to arbitration in the first instance. *See Shroud,* 34 Ill.Dec. at 430–31, 398 N.E.2d at 105–06.

Similar principles apply with respect to civil actions brought pursuant to C.R.C.P. 106(a)(4). It is the law in Colorado that failure to bring a 106(a)(4) proceeding within the thirty-day period required by C.R.C.P. 106(b) is a jurisdictional defect, which deprives the court of subject matter jurisdiction over the case. *Sullivan v. Board of County Commissioners,* 692 P.2d 1106, 1109 (Colo.1984); *Gold Star Sausage Co. v. Kempf,* 653 P.2d 397, 400 (Colo.1982).

Having decided that Zone's failure to apply for an order vacating the arbitration award resolves this case on procedural grounds, it is not necessary to reach the question of whether section 10–4–713(2) is unconstitutional as applied to Zone.

We, therefore, reverse that portion of the district court's order rejecting State Farm's procedural objections and allowing Zone to present its substantive defenses, affirm that portion of the order denying Zone's motion to dismiss and granting State

---

without directing a rehearing; (f) a judgment or decree entered pursuant to the provisions of this part (2).

(2) The appeal shall be taken in the manner and to the same extent as from orders or judgments in civil actions.

9. Section 13–22–214(2), 6 C.R.S. (1980 Supp.), states:

An application under this section shall be made within ninety days after delivery of a copy of the award to the applicant; except that, if predicated upon corruption, fraud, or other undue means, it shall be made within ninety days after such grounds are known or should have been known.

10. Section 13–22–214(1)(a)(V) also sets forth an additional ground for vacating an arbitration award: "There was no arbitration agreement and the issue was not adversely determined in proceedings under section 13–22–204 and the party did not participate in the arbitration hearing without raising the objection." Although Zone alleges that there was no arbitration agreement in the instant case, it failed to raise this issue before the district court. Moreover, pursuant to section 13–22–204, Zone could have moved to stay arbitration which the Act authorizes where "there is no agreement to arbitrate." Zone failed to take advantage of this provision in the statute as well.

Farm's petition to confirm, and remand this case for further proceedings consistent with this opinion.