**REGIONAL TRANSPORTATION DISTRICT, a political subdivision of the State of Colorado, Plaintiff–Appellant,**

v.

**AURORA PUBLIC SCHOOLS and Adams–Arapahoe School District 28–J, Defendants–Appellees.**

No. 00CA2340.

Colorado Court of Appeals,
Div. II.

Nov. 8, 2001.

Certiorari Denied May 13, 2002.

James A. Stadler, Erica A. Weber, Denver, CO, for Plaintiff–Appellant.

Patterson, Nuss & Seymour, P.C., Craig S. Nuss, Lee N. Bowden, Englewood, CO, for Defendants–Appellees.

Opinion by Judge DAVIDSON.

Plaintiff, Regional Transportation District (RTD), appeals from the trial court's judgment in favor of defendants, Aurora Public Schools and Adams–Arapahoe School District 28–J. The issue addressed on appeal is construction of the 1991 amendment to § 10–4–713(2)(a), C.R.S.2001. We affirm.

An Aurora Public Schools bus struck the rear end of an RTD bus. Passengers on the RTD bus were injured and received personal injury protection (PIP) benefits from RTD pursuant to the Colorado Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S.2001 (No–Fault Act).

Generally, PIP benefits are not recoverable by subrogation against a tortfeasor. However § 10–4–713(2)(a), under limited circumstances, allows the insurer of certain vehicles to file a subrogation claim against the operator of a nonprivate passenger vehicle for PIP benefits paid.

Seeking to recover the PIP benefits it paid to its passengers, RTD filed a declaratory judgment action requesting that the court rule as a matter of law that it could proceed in subrogation against defendants under § 10–4–713(2)(a).

In response, defendants filed a motion for summary judgment, which the trial court granted. The court determined that § 10–4–713(2)(a), as amended in 1991, and as relevant here, applied only to public school vehicles and consequently did not permit RTD to bring an action for reimbursement of PIP benefits. Alternatively, the court also concluded that RTD would otherwise be barred from bringing a subrogation claim because it had not timely demanded arbitration proceedings pursuant to § 10–4–717(1), C.R.S. 2001.

■ In 1991, § 10–4–713(2)(a) was amended to add the following emphasized language:

[w]here a motor vehicle accident involves a private passenger motor vehicle, *a public school vehicle designed to transport seven or more passengers*, and a nonprivate passenger motor vehicle, the insurer of the private passenger motor vehicle *or the insurer of the vehicle designed to transport seven or more passengers* shall have a direct cause of action for all benefits actually paid by such insurer. . . .

Colo. Sess. Laws 1991, ch. 203, § 10–4–713(2)(a) at 1190.

RTD contends that the trial court erred by concluding that the added language in § 10–4–713(2)(a), pertaining to "the vehicle designed to transport seven or more passengers" refers only to public school vehicles. RTD argues that the court's interpretation is contrary to the rules of statutory construction and public policy. We disagree.

■ We interpret statutes *de novo. See United Airlines, Inc. v. Industrial Claim Appeals Office*, 993 P.2d 1152 (Colo.2000). A statute must be interpreted as a whole to allow consistent application of all its parts. To effectuate the intent of the General Assembly, in construing statutory language we look first to the language of the statute itself, giving words and phrases their commonly accepted meaning. *See Slack v. Farmers Ins. Exchange*, 5 P.3d 280 (Colo.2000); *Ward v. Ward*, 928 P.2d 739 (Colo.App.1996).

Here, the trial court determined that the language of the amendment was unambiguous. The court found that the phrase "the vehicle designed to transport seven or more

passengers" simply referred back to the earlier part of the sentence, "a public school vehicle designed to transport seven or more passengers." The trial court also noted that the legislative history of the statute supported this interpretation.

RTD contends that, to the contrary, the statute is ambiguous, as illustrated by the fact that the trial court, to reach its conclusion, had to "add" the words "public school" to modify the phrase "the vehicle designed to transport seven or more passengers." We disagree.

Although we agree with RTD that the statute is inartfully drafted, it is not ambiguous. The phrases "a public school vehicle designed to transport seven or more passengers" and "or the insurer of the vehicle designed to transport seven or more passengers," were the only two phrases added by the 1991 amendment, see Senate Committee of Reference Report, Committee on Business Affairs and Labor, April 16, 1991, at 4, and plainly address the same type of vehicle, that is, public school buses.

Importantly, the word "the" is "used as a function word to indicate that a following noun or noun equivalent is definite or has been previously specified by context or circumstance." *Webster's Third New International Dictionary* 2368 (1976). Therefore, use of "the" as the article introducing the phrase "vehicle designed to transport seven or more passengers" is a reference back to the previously specified entity, "a public school vehicle designed to transport seven or more passengers."

Moreover, the parallel construction of this sentence of the statute indicates that the General Assembly intended the phrases *"the* private passenger motor vehicle," *"the* vehicle designed to transport seven or more passengers," and *"the* nonprivate passenger motor vehicle" to refer back to the phrases *"a* private passenger motor vehicle," *"a* public school vehicle designed to transport seven or more passengers," and *"a* nonprivate passenger motor vehicle" in the earlier portion of the sentence. *See* § 10–4–713(2)(a) (emphasis added).

RTD argues, however, that the policy underlying the original statute was to expand subrogation rights, and, therefore, a restrictive construction of the 1991 amendment violates that purpose. We disagree. To the contrary, § 10–4–713(2)(a), as originally enacted, clearly limited PIP subrogation rights to a few exceptional circumstances. As relevant here, the policy underlying the statute was to prevent a premium shift by allowing insurers of private passenger vehicles to seek subrogation from insurers of commercial vehicles, which were larger and tended to do more damage. *See* Hearings on H.B. 1027 before the Senate Committee on Business Affairs and Labor, 49th General Assembly, First Regular Session (Feb. 21 and 28, 1973); *see also Farmers Ins. Exchange v. Bill Boom Inc.,* 961 P.2d 465 (Colo.1998).

The language of the 1991 amendment merely included another category—insurers of public school buses—to that exclusive list of insurers entitled to PIP subrogation rights against commercial vehicles. *See* Hearing on H.B. 1133/18 before the Senate Committee on Business Affairs and Labor, 58th General Assembly (March 16, 1991)(statement of Senator Mutzebaugh).

We also note that when the General Assembly wanted RTD to be included within the scope of a particular provision of the No–Fault Act, it expressly did so. *See, e.g.,* § 10–4–713(2)(b), C.R.S.2001 (excluding the "regional transportation district" from liability for reimbursement of PIP benefits under § 10–4–713(2)(a)).

■ RTD also argues that, nevertheless, as a policy matter, its passenger buses should be included as "public school vehicles" because they in fact transport students.

However, RTD's primary function is not the transportation of public school students, but the transportation of a wide range of paying passengers. *See* § 32–9–107, C.R.S. 2001 (granting regional transportation district authority to create mass transportation system for the benefit of the inhabitants of the district). That an RTD bus happens to transport public school students on occasion is merely incidental to its primary purpose. *Cf.* § 42–1–102(88) C.R.S.2001 (defining a school bus as "every motor vehicle which is

owned by or under contract to a public or governmental agency and operated for the transportation of children to or from school or any school-sponsored activities"); § 42–4–1901, et seq., C.R.S.2001 (regulating school buses and their drivers).

Based on our disposition of this matter, it is unnecessary to address RTD's argument that, regardless of the supreme court's opinion in *State Farm Mutual Insurance Co. v. Cabs, Inc.*, 751 P.2d 61 (Colo.1988), the trial court erred in determining that RTD would be required to timely demand arbitration pursuant to § 10–4–717(1).

The judgment is affirmed.

Judge MARQUEZ and Judge ROY concur.