Pauline **TASSIAN**, Petitioner,

v.

The **PEOPLE** of the State of Colorado, Respondent.

No. 84SC389.

Supreme Court of Colorado, En Banc.

Jan. 20, 1987.

Holland & Hart, John S. Castellano, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Howard, Asst. Atty. Gen., Denver, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Tassian v. People,* 696 P.2d 825 (Colo.App.1984), which, in affirming a judgment of dismissal, held that a Denver District Court chief judge's directive prohibiting pro se litigants from paying filing fees by personal checks did not violate equal protection of the laws under the Colorado Constitution. Because the chief judge's directive lacks a rational basis for distinguishing between pro se litigants and litigants represented by attorneys, we conclude that it violates equal protection of the laws under the Colorado Constitution.[1] We therefore reverse the judgment of the court of appeals and remand the case for further proceedings.

## I.

On July 15, 1983, the Colorado Commissioner of Insurance issued an order, pursuant to section 12–7–106(1), 5 C.R.S. (1986), revoking the professional bail license of the petitioner, Pauline Tassian.[2] Under the State Administrative Procedure Act, Tassian had the right to file an action for judicial review in the district court within thirty days after the commissioner's order became effective. § 24–4–106(4), 10 C.R.S. (1982). On the last day of the thirty-day period, Tassian's friend, Janice Acker, submitted to the clerk of the Denver District Court a pro se "Motion to Appeal" prepared by Tassian. The motion alleged that there was insufficient evidence to support the commissioner's revocation order. In payment of the $76 filing fee, Acker tendered $45 in cash and wrote a personal check for $31 drawn on a local bank for the balance. The clerk refused to accept Acker's personal check because a chief judge's

---

1. Article II, section 25 of the Colorado Constitution states that "[n]o person shall be deprived of life, liberty or property, without due process of law." We have held on innumerable occasions that this due process guarantee includes the right to equal protection of the laws. *E.g., DeScala v. Motor Vehicle Division,* 667 P.2d 1360 (Colo.1983); *Lujan v. Colorado State Board of Education,* 649 P.2d 1005 (Colo.1982); *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980); *Vanderhoof v. People,* 152 Colo. 147, 380 P.2d 903 (1963); *People v. Max,* 70 Colo. 100, 198 Pac. 150 (1921).

2. The commissioner found that Tassian violated section 12–7–109(1)(g), 5 C.R.S. (1985), which makes it unlawful for a bail bonds licensee to "[a]ct as a professional bondsman in any court of record in this state if he is in default in securing any person's bond."

directive, which apparently was an oral directive from the chief judge to the clerk,[3] prohibited pro se litigants from paying filing fees by personal checks. The clerk initially retained Tassian's motion, but because Acker was unable to contact Tassian that day to alert her to the need of a cash filing fee, the clerk returned the motion to Tassian by mail. Tassian refiled the motion on August 25, 1983, and paid a cash filing fee at that time.

The People filed a motion to dismiss Tassian's action as untimely filed. In response to the motion Tassian filed an affidavit by Janice Acker stating that there were sufficient funds in her checking account for payment of the check tendered as payment for the filing fee. The district court granted the motion and dismissed the case with prejudice.

Tassian appealed the judgment of dismissal to the court of appeals, claiming that the chief judge's directive violated equal protection of the laws. The court of appeals concluded that the directive, which involved neither a fundamental right nor a suspect classification, was reasonably related to a legitimate governmental objective and thus satisfied equal protection of the laws under Article II, section 25 of the Colorado Constitution. We thereafter granted Tassian's petition for certiorari to consider whether the court of appeals correctly resolved this issue.

## II.

Equal protection of the laws requires that the government treat similarly situated persons in a similar manner. A distinction between classes or groups of people, whether created by a statute or rule, must have some relevance to the purpose for which the classification is made. *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S.Ct. 760, 762, 15 L.Ed.2d 620 (1966).[4] When governmental action is subjected to an equal protection challenge, the level of judicial scrutiny varies with the type of classification employed and the nature of the right affected.

In interpreting the equal protection guarantee under the Colorado Constitution, we have followed the analytical mode developed by the United States Supreme Court in construing the Equal Protection Clause of the Fourteenth Amendment. When the classification creates a suspect class, such as one based on race or national origin, or interferes with the exercise of a fundamental right, such as the right of free speech or religion, a standard of strict judicial scrutiny must be applied in resolving an equal protection challenge. The government in such a case must establish that the statutory classification is necessarily related to a compelling governmental interest. *See, e.g., San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Shapiro v.*

---

**3.** Because the chief judge's directive was not made part of the record in this case, the district court was requested to supplement the record by certifying the directive to this court. CAR 11(e). The district court was unable to find a written directive. That either a written or oral directive existed, however, is obvious from the trial court's ruling on the motion to dismiss. The trial court stated in relevant part as follows:

> The circumstances of the case, while unfortunate, do not serve to confer jurisdiction on the Court. On August 15, 1983, plaintiff appeared to file the Complaint at 10:26 a.m., tendering a personal check to cover the filing fee. *Since it is well known by Court personnel, attorneys and sureties and others having business with the courts that personal checks are not acceptable for filing pro se matters, pursuant to a directive of the Chief Judge*

(plaintiff has been a surety since approximately April 11, 1980), the personal check was not accepted and the filing stamp and case number assigned were voided. Plaintiff did not return to the Clerk's Office on August 15, 1983 to tender other funds for a filing fee, and could not be reached throughout the day, as a consequence of which her Complaint was returned to her by mail. Ten days later, she returned to the Court and filed the Complaint, paying the proper fee. (emphasis added).

**4.** While an equal protection challenge generally arises in the context of statutory enactments, it applies equally to judicial action. *E.g. Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Virginia v. Rives*, 100 U.S. (10 Otto) 313, 25 L.Ed. 667 (1879); *Ex parte Virginia*, 100 U.S. (10 Otto) 339, 25 L.Ed. 676 (1879).

*Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *People v. Chavez,* 629 P.2d 1040 (Colo.1981); *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980); *Jarmel v. Putnam,* 179 Colo. 215, 499 P.2d 603 (1972). Certain classifications, such as illegitimacy and gender, have been analyzed under an intermediate standard of scrutiny. Under this standard, the government is required to demonstrate a substantial relationship between the classification and an important governmental objective. *E.g., Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *R.Mc.G. v. J.W.,* 200 Colo. 345, 615 P.2d 666 (1980).

■ In the absence of a suspect class, a fundamental right, or a classification triggering an intermediate standard of scrutiny, a rational basis standard of review is applicable. While equal protection of the laws does not demand that a statute or rule necessarily applies equally to *all* persons, it does require, under rational basis analysis, that a governmental classification which singles out a group of persons for disparate treatment be rationally founded on differences that are real and not illusory and that such classification be reasonably related to a legitimate state interest. *See, e.g., San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16; *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Branson v. City and County of Denver,* 707 P.2d 338 (Colo.1985); *Hurricane v. Kanover, Ltd.,* 651 P.2d 1218 (Colo.1982); *Smith v. Charnes,* 649 P.2d 1089 (Colo.1982); *Petrafeck v. Industrial Commission,* 191 Colo. 566, 554 P.2d 1097 (1976). There is a presumption of constitutionality attaching to a classification analyzed under the rational basis standard, with the burden being on the challenging party to establish unconsti-

tutionality beyond a reasonable doubt. *E.g. Branson,* 707 P.2d 338; *Dawson by and through McKelvey v. P.E.R.A.,* 664 P.2d 702 (Colo.1983).

■ When the rational basis standard has not been met, the classification must be stricken even if the invalidation results in an additional administrative inconvenience to the governmental body. Administrative convenience, by itself, does not constitute a valid basis for the imposition of disparate treatment upon persons who, with respect to the activity in question, are basically in the same position as others who are not singled out for different treatment. *E.g., Rinaldi,* 384 U.S. 305, 86 S.Ct. 1497; *Baxstrom,* 383 U.S. 107, 86 S.Ct. 760; *Carter v. Fireman's Pension Fund,* 634 P.2d 410 (Colo.1981); *see also Petrafeck,* 191 Colo. 566, 554 P.2d 1097.

### III.

■ Tassian raises alternative arguments in challenging the chief judge's directive: first, that the directive abridges a pro se litigant's fundamental right of access to the courts [5] and fails to satisfy the strict level of scrutiny applicable to a fundamental right; and, alternatively, that the directive fails to pass constitutional muster under a rational basis standard of review. We need not address here the first prong of Tassian's argument in resolving this case. We can properly dispense with a consideration of this aspect of Tassian's claim because we are convinced that the directive fails to satisfy the rational basis standard of review applicable to an equal protection challenge under the Colorado Constitution.

Although the chief judge's directive is not part of the record before us, it appears from the district court's ruling on the People's motion to dismiss that the directive is aimed exclusively at personal checks tendered by pro se litigants in payment of filing fees. *See* note 3, *supra.* Neither

5. Article II, section 6 of the Colorado Constitution states that "[c]ourts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay."

the record nor the district court's ruling indicates in any way that the directive would prohibit a litigant represented by an attorney from paying a filing fee by personal check. The distinction created by the chief judge's directive appears to be a distinction not between lawyers and non-lawyers but between pro se litigants and litigants represented by lawyers. The classifying feature of the chief judge's directive, therefore, is the pro se litigant's failure to retain an attorney in connection with a claim for which a statutory filing fee is required. The constitutional flaw in the directive is the lack of a rational foundation for prohibiting pro se litigants from paying the filing fee by personal check and simultaneously not prohibiting a litigant represented by counsel from paying the same filing fee by personal check. While we acknowledge that the state's interest in collecting the full statutory filing fee is certainly a legitimate one, we are convinced beyond a reasonable doubt that, with respect to the prohibition against the pro se litigant's payment of a filing fee by personal check, the differences between pro se litigants and litigants represented by attorneys are so attenuated and illusory as to render the classification created by the chief judge's directive arbitrary and irrational.

Even if we were to assume that the chief judge's directive benefits the court by reducing the risk of receiving bad checks in payment of filing fees, such a benefit is in the form of an administrative convenience that is nothing more than the by-product of the unreasonable classification created by the directive itself. If the incidence of bad checks in the payment of filing fees is indeed a problem for the courts—a matter not disclosed by this record—protective measures might well be warranted to reduce or eliminate that problem. Such measures, however, cannot arbitrarily discriminate against the pro se litigant who, as much as the litigant represented by counsel, has the right to seek judicial relief for the redress of legal wrongs in accordance with procedures applicable to all who use the courts.

The People assert that a rational basis for the classification can be found in the special relationship between lawyers and courts, in that the license to practice law and the obligation to conform to the Code of Professional Responsibility provide the court with a more direct avenue of redress in the event a lawyer pays a filing fee on behalf of a client with a check that is unpaid due to insufficient funds. The unstated premise of this argument is that the directive creates a classification between lawyers and nonlawyers with respect to personal checks tendered in payment of filing fees. As already noted, however, the district court interpreted the directive to prohibit a pro se litigant from paying a filing fee by personal check, but made no mention in its ruling of any such prohibition against the payment of a filing fee by the personal check of a client represented by an attorney. Because nothing of record indicates that the directive would prohibit a client represented by an attorney from paying a filing fee with the client's personal check, the People's asserted justification for the directive proceeds from an unsupported assumption.[6] The chief judge's directive at issue here clearly discriminates

---

6. Although not critical to our resolution of this case, we have serious doubts about People's asserted justification for the classification, namely, that the lawyer's obligation to conform to the Code of Professional Responsibility provides the court with a more direct avenue of redress in the event a lawyer were to pay a filing fee on behalf of a client with a short check. A pro se litigant, in contrast to an attorney representing a client, has a direct personal interest in his or her own case. The dismissal of a pro se litigant's case due to an uncollected check tendered in payment of a filing fee will have a direct and immediate effect on the legal rights of the pro se litigant. In the case of a client who is represented by counsel and who pays a filing fee with an uncollected check drawn on his own account, an order of dismissal, while obviously detrimental to the client, would not directly and immediately affect the legal rights of the lawyer. Moreover, since the check in such a case would have been drawn on the client's account, not the lawyer's, it is doubtful whether the Code of Professional Responsibility could apply at all to that situation.

against pro se litigants solely on the basis of their pro se status and, in that respect, lacks any rational basis in fact and thus violates equal protection of the laws as guaranteed by article II, section 25 of the Colorado Constitution.

The judgment of the court of appeals is reversed and the cause is remanded to that court with directions to return the case to the district court for further proceedings not inconsistent with the views herein expressed.