**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner–Appellant,**

v.

**Earle BROADNAX, Respondent– Appellee.**

**Philipp GAAL, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant.**

**Nos. 91SA175, 91SA129.**

Supreme Court of Colorado, En Banc.

March 23, 1992.

**532**

Marc Levy & Associates, P.C., Marc R. Levy, Stuart D. Morse, Englewood, Creamer & Seaman, P.C., Thomas J. Seaman, Thomas J. Jirak, Denver, for petitioner-appellant in No. 91SA175.

No appearance on behalf of respondent-appellee in No. 91SA175.

Creamer & Seaman, P.C., Thomas J. Seaman, David P. Reiter, Denver, for defendant-appellant in No. 91SA129.

Kidneigh & Kaufman, P.C., Larry L. McCray, Denver, for plaintiff-appellee in No. 91SA129.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Eugene C. Cavaliere, Merrill Shields, Deputy Attys. Gen., Richard Djokic, First Asst. Atty. Gen., Robert M. Howard, Asst. Atty. Gen., Denver, for amicus curiae Atty. General's Office, in Nos. 91SA175 and 91SA129.

Justice VOLLACK delivered the Opinion of the Court.

State Farm Mutual Automobile Insurance Company (State Farm) appeals from two district court orders in two unrelated actions. In each action, State Farm challenged the constitutionality of section 10–4–708(1.5), 4A C.R.S. (1990 Supp.), which requires binding arbitration of disputes arising under no fault insurance contracts. We simultaneously address both appeals, since the constitutional challenges to section 10–4–708(1.5) in each are substantially the same.[1] We affirm the district court's finding that section 10–4–708(1.5) is constitutional.

### State Farm Mutual Automobile Insurance Co. v. Broadnax
### No. 90CV11678

State Farm issued a car insurance policy to Earle Broadnax (Broadnax) prior to December 18, 1988. On December 18, 1988, and on September 7, 1989, Broadnax was involved in car accidents. Broadnax submitted claims to State Farm for personal injury protection benefits under his policy. A dispute regarding payment of benefits ensued, and Broadnax served State Farm with a Demand for Arbitration on April 3, 1990.

---

1. Section 13–4–102(1)(b), 6A C.R.S. (1987), grants this court jurisdiction over appeals when the constitutionality of a statute is at issue.

On November 6, 1990, State Farm filed a Petition to Stay Arbitration and sought a declaration that section 10–4–708(1.5) was unconstitutional. The district court denied the stay and found the statute to be constitutional.

*Gaal v. State Farm Mutual Automobile Insurance Co.*

No. 90CV9218

State Farm issued a car insurance policy to Rashel Engholm prior to October 14, 1988. On that date, Philipp Gaal (Gaal) was involved in an accident with Rashel Engholm and qualified for personal injury protection benefits under the policy. State Farm paid benefits to or on behalf of Gaal, but a dispute arose and Gaal served a Demand for Arbitration on State Farm.[2]

An arbitration hearing was held in July 1990, at which State Farm argued that section 10–4–708(1.5) was unconstitutional. State Farm later filed an Application to Vacate the Arbitration Award in district court.

On March 25, 1991, the district court relied on its finding in *State Farm Mutual Automobile Insurance Company v. Broadnax* that section 10–4–708(1.5) was constitutional, and denied State Farm's application. State Farm now seeks review of the district court's determination in each case.

Section 10–4–708(1.5) provides, in pertinent part, that in "[a]ny action for breach of contract brought pursuant to subsection (1) of this section shall proceed to binding arbitration." Section 10–4–708(1.5) is part of the Motor Vehicle ("No Fault") Insurance Act (No Fault Act). §§ 10–4–701 to –724, 4A C.R.S. (1991 Supp.).

The No Fault Act requires automobile owners to have insurance policies which provide coverage to insureds for personal injuries sustained in automobile accidents. § 10–4–706, 4A C.R.S. (1987 & 1991 Supp.). Insurers are obligated under the No Fault Act to provide direct benefits to insureds. *Id.* When the benefits sought exceed $2,500, insureds may bring an action in tort against another automobile owner or operator. § 10–4–714(1)(e), 4A C.R.S. (1987). When an insured is liable for benefits paid by another insurer, the No Fault Act requires insurers to resolve reimbursement issues through mandatory, binding arbitration. § 10–4–717, 4A C.R.S. (1987).[3]

The disputes thus governed by section 10–4–708(1.5) arise from the *statutory right* of insureds to recover benefits directly from insurers. § 10–4–708(1), 4A C.R.S. (1987). As an insurer, State Farm is in essence contesting its *statutory* obligation to disburse benefits. Section 10–4–708(1.5) was enacted on June 1, 1989, and took effect on January 1, 1990.[4] Approximately one year later, section 10–4–708(1.5) was amended to provide parties with the option of resolving disputes through either binding arbitration or actions in contract. § 10–4–708(1.5), 4A C.R.S. (1991 Supp.). State Farm challenges section 10–4–708(1.5) as it applied to Broadnax's and Gaal's disputes, which arose between January 1, 1990, and July 1, 1991. Our consideration of State Farm's challenges is thus limited to the version of section 10–4–708(1.5) which existed prior to the 1991 amendment.

**I.**

State Farm contends that section 10–4–708(1.5), 4A C.R.S. (1990 Supp.), extinguishes its right of access to courts because the section removes State Farm's statutory cause of action for disputes arising under the No Fault Act from a trial to jury before a district court, without provid-

2. Gaal was riding a bicycle when Engholm hit him with her car. Gaal made a claim under Engholm's policy, and on April 9, 1990, served State Farm with a demand for arbitration. On August 9, 1990, after arbitration, the arbitrators entered an award in favor of Gaal, awarding him lost wages, travel expenses, and attorney's fees.

3. State Farm previously argued that intercompany mandatory binding arbitration was constitutional in *State Farm Mutual Automobile Insurance Co. v. Cabs, Inc.*, 751 P.2d 61, 63 (Colo. 1988).

4. Act approved June 1, 1989, ch. 82, sec. 6, 1989 Colo.Sess.Laws 458–61.

ing a right of *de novo* review by a district court following an adverse arbitration award.[5] After careful consideration of the constitutional guarantee, we find no violation of State Farm's right of access to courts.

### A.

### The Right of Access to Courts

 State Farm's contention posits that the right of access to courts guarantees Colorado litigants a trial to jury before a district court for disputes arising under the No Fault Act, and that the scope of appellate review be *de novo*. While we have previously evaluated the scope of the right of access to courts, we have not passed on the contentions raised by State Farm in the context of mandatory binding arbitration of disputes arising under the No Fault Act.[6] In resolving this inquiry, we thus look to the law of other jurisdictions for guidance.

The United States Constitution does not expressly provide for a right of access to courts. *Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 674 (Utah 1985); *see also Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir.1985). Rather, the federal right of access to courts has been located in the Due Process Clause of the Fourteenth Amendment,[7] in the First Amendment's provision securing the right to petition the government for redress of grievances,[8] and in the Privileges and Immunities Clause of the Fourteenth Amendment.[9]

The United States Supreme Court has noted that the right of access to courts and the guarantees of due process have developed in response to challenges by defendants involuntarily haled into the formal judicial process. *Boddie v. Connecticut*, 401 U.S. 371, 375, 91 S.Ct. 780, 784, 28 L.Ed.2d 113 (1970).[10] Thus, whether litigants are afforded adequate constitutional access to courts often sounds in due process under federal analysis. *See, e.g., id.; Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 n. 5, 102 S.Ct. 1148, 1154 n. 5, 71 L.Ed.2d 265 (1982).[11] The Tenth Circuit Court of Appeals, in construing prison inmates' right of access, has stated that "[a]ccess to the courts 'encompasses all the means a defendant or petitioner might require to get a fair hearing from the judiciary on all charges brought against him or

---

**5.** The right of access to courts in the Colorado Constitution provides as follows:

> **Equality of justice.** Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay.

Colo. Const. art. II, § 6. State Farm also asserts its rights to access under article II, section 3, which provides as follows:

> **Inalienable rights.** All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness.

Colo. Const. art. II, § 3.

**6.** This court has construed the constitutional right of access as guaranteeing that courts will be available to effectuate rights if they accrue under law. *Sigman v. Seafood Limited Partnership*, 817 P.2d 527, 533 (Colo.1991) (relying on *O'Quinn v. Walt Disney Productions*, 177 Colo. 190, 493 P.2d 344 (1972)). This court has simultaneously recognized that the right of access provision does not prevent the legislature from changing laws which create rights. *Id.; see also*

*Curtiss v. GSX Corp.*, 774 P.2d 873, 876 (Colo. 1989).

**7.** *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir.1985) (relying on *Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir.1983), and *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974)).

**8.** *Nordgren*, 762 F.2d at 853 (relying on *Ryland*, 708 F.2d at 971, and *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972)).

**9.** *Nordgren*, 762 F.2d at 853 (relying on *Ryland*, 708 F.2d at 971).

**10.** The *Boddie* Court determined that welfare recipients unable to pay fees prerequisite to bringing a divorce action were deprived of their access to courts.

**11.** In considering whether a litigant was denied due process under the Illinois Fair Employment Practices Act, the *Logan* Court found that right of access cases "provide[d] an analogous method of analysis supporting [its] reasoning here." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 n. 5, 102 S.Ct. 1148, 1155 n. 5, 71 L.Ed.2d 265 (1982).

grievances alleged by him.'" *Nordgren,* 762 F.2d at 853 (quoting *Gilmore v. Lynch,* 319 F.Supp. 105, 110 (N.D.Cal.1970), *aff'd sub nom. Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) (per curiam)). Accordingly, the Court of Appeals for the Fifth Circuit has held that "[b]efore a 'compelling interest' standard of strict scrutiny is applied, the right that plaintiffs seek to vindicate by access to the courts must be a fundamental right." *Wayne v. Tennessee Valley Authority,* 730 F.2d 392, 403 n. 9 (5th Cir.1984) (citing *Boddie,* 401 U.S. at 381, 91 S.Ct. at 788) (holding that statute of limitations in products liability action did not deprive homeowners of access to courts through due process).

Colorado, however, is one of thirty-seven states which diverged from the federal constitutional model by creating an express right of access to courts independent of constitutional due process guarantees. *Beech Aircraft Corp.,* 717 P.2d at 674 (citing Francis E. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 Am. U.L.Rev. 579, 615 n. 218 (1981)); *Lankford v. Sullivan, Long & Hagerty,* 416 So.2d 996, 999 (Ala.1982).

In evaluating the right of access under the Alabama Constitution, Justice Shores has noted that the origins of the right

can be traced back to the Magna Charta. Although its language is broad enough to be subject to varying interpretations, it can generally be said to incorporate into our constitution a fundamental principle of fairness, a perhaps vaguely conceived but important notion of limitation on the power of government to infringe upon individual rights, and to act arbitrarily. What those rights are, what degree of infringement is permitted, and with how much justification, are inquiries which have been the subject of long-standing debate....

*Id.* at 999 (citation omitted).

While the thirty-seven constitutional provisions are "essentially similar,"[12] their application has varied. Under the Louisiana

constitutional guarantee, for example, the legislature is free to allocate access to the formal judicial system using any system or classification which is not totally arbitrary so long as access to the system is not essential to the exercise of a fundamental constitutional right. *Bazley v. Tortorich,* 397 So.2d 475, 485 (La.1981) (finding no violation where employee was denied right to sue in tort under worker's compensation statute).

The Utah access to courts provision "guarantees access to the courts and a judicial procedure that is based on fairness and equality." *Beech Aircraft Corp.,* 717 P.2d at 675. Utah courts construe the constitutional right of access to courts by examining its history and plain language, in addition to its functional relationship to other constitutional provisions. *Id.* The Utah Supreme Court has accordingly noted that the right of access provision and the due process clause "are related both in their historical origins and to some extent in their constitutional functions." *Id.* The two provisions are thus "complementary and even overlap, but they are not wholly duplicative. Both act to restrict the powers of both the courts and the legislature." *Id.*

The Nebraska Supreme Court, conversely, has interpreted the constitutional right of access as "merely a declaration of a general fundamental principle." *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657, 663 (1977). In *Prendergast,* the court upheld the legislature's power to impose special procedures before resort to courts. *Id.* The court noted that Nebraska courts have "the primary duty ... to safeguard [the provision's] declaration of rights and remedies." *Id.*

In Colorado, the access to courts provision guarantees that courts will be available to effectuate rights that accrue under law. *O'Quinn v. Walt Disney Prods., Inc.,* 177 Colo. 190, 195, 493 P.2d 344, 346 (1972); *Firelock Inc. v. District Court,* 776 P.2d 1090, 1096 (Colo.1989). This court has stated that "[g]enerally, a burden on a

---

**12.** *Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 674 (Utah 1985).

party's right of access to the courts will be upheld so long as it is reasonable." *Firelock*, 776 P.2d at 1096.[13] We have recently observed that the right of access under the Colorado Constitution "protects *initial* access to the courts." *State v. DeFoor*, 824 P.2d 783 (Colo.1992). In examining initial access to courts, we are in essence examining access to the formal judicial process.

## B.

### The Right of Access As Applied to Statutory Claims Arising Under the No Fault Act

In the present case, State Farm calls on this court to evaluate its access to the judicial process as set out in the No Fault Act. Disputes arising under the No Fault Act proceed to binding arbitration before resorting to courts. § 10–4–708(1.5), 4A C.R.S. (1990 Supp.). Each party to the arbitration selects an arbitrator, and these two arbitrators select a third. *Id.* The arbitrators then set a time and place for a hearing, with the mutual consent of the parties. *Id.* Arbitrators may issue subpoenas for witnesses and compel production of evidence. Arbitrators must file an order with the insurance commissioner within ten days of the hearing. *Id.* Such order may be vacated, modified, or corrected pursuant to the Uniform Arbitration Act.

The Uniform Arbitration Act in turn confers jurisdiction on Colorado courts to enforce and enter judgments on arbitration awards. § 13–22–219, 6A C.R.S. (1987). Parties may apply to courts to confirm arbitration awards made pursuant to section 10–4–708(1.5). § 13–22–213, 6A C.R.S. (1987). Parties may also apply to courts to vacate awards where the arbitrators exceeded their powers or where an award was procured by fraud, corruption, or other undue means. § 13–22–214, 6A C.R.S. (1987). Parties may also apply to courts to modify or correct arbitration awards where there was an evident mistake or where the award was premised on a matter not submitted to the arbitrators. § 13–22–215, 6A C.R.S. (1987). Finally, parties may appeal such court orders "in the manner and to the same extent as from orders or judgments in civil actions." § 13–22–221, 6A C.R.S. (1987).

In determining whether this dispute resolution scheme secures State Farm's right of access to the judicial process, we are guided by the requirements of due process. The United States Supreme Court has consistently held that due process requires some form of hearing—the opportunity to be heard at a meaningful time, and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1975).

**13.** In *Firelock,* we evaluated the constitutionality of the Mandatory Arbitration Act. The Mandatory Arbitration Act was then a pilot project that imposed mandatory arbitration on all civil actions filed in any one of eight judicial districts, where the amount of money damages sought did not exceed $50,000. *Firelock,* 776 P.2d at 1092–93. Firelock argued that its right of access to courts was violated by forced arbitration and by the requirement that a party who requested a trial *de novo* was required to pay arbitration costs if the party did not improve its position by at least ten percent. *Id.* at 1096. In concluding that Firelock's right of access was not violated, we noted that many burdens on the right of access to courts were "present within our system of justice." *Id.*

In the present disputes, the district court distinguished *Firelock* on two grounds. First, the district court noted that the Mandatory Arbitration Act had a broad application: to all civil actions where the damages sought were $50,000 or less. Section 10–4–708(1.5), conversely, has an extremely narrow focus, applying only to

disputes of personal injury protection benefits under the No Fault Act. Secondly, the district court noted that the Mandatory Arbitration Act imposed arbitration where there was no agreement to arbitrate disputes, while § 10–4–708(1.5) requires arbitration only where contracts to resolve disputes incorporated arbitration by operation of law.

Section 10–4–708 serves different purposes than the Mandatory Arbitration Act. Titled "Prompt payment of direct benefits," it establishes a limited time frame in which insurance companies must quickly pay claims due under insureds' personal injury protection provisions of their automobile insurance contracts. Personal injury protection is required in Colorado; it guarantees that victims of automobile accidents will be adequately compensated in a timely fashion. §§ 10–4–702 to –708, 4A C.R.S. (1987 & 1990 Supp.). Personal injury protection insurance assures compensation without regard to fault in any accident. *See* § 10–4–706(1)(b), 4A C.R.S. (1987).

Under the statutory scheme, State Farm clearly has the right to a hearing in which State Farm can present all the evidence, and raise all the defenses available to it. State Farm also has the right to resort to the formal judicial system should it find an arbitrator's order adverse to its interest. We thus conclude that State Farm is not deprived of its access to the judicial process under the Colorado Constitution.

We are not alone in our determination. The Court of Appeals for the Fourth Circuit has observed that "it is too late in the day to argue that compulsory arbitration, per se, denies due process of law.... Congress may require arbitration so long as fair procedures are provided and ultimate judicial review is available." *Republic Industries, Inc. v. Teamsters Joint Council No. 83*, 718 F.2d 628, 640 (4th Cir.1983). Where a party "may come to the district court to enforce, vacate or modify an arbitrator's award, [the party] is not denied meaningful access to the Courts." *Textile Workers Pension Fund v. Standard Dye & Finishing Co.*, 725 F.2d 843, 855 (2d Cir.1984) (upholding compulsory, binding arbitration, in reliance on *Republic Industries*).

The Connecticut Supreme Court has similarly upheld a statutory scheme mandating arbitration providing judicial review substantially similar to that available in the present case. *Chmielewski v. Aetna Casualty and Surety Co.*, 218 Conn. 646, 591 A.2d 101, 109 (1991). In so doing, the court noted:

> Indeed, a de novo scope of review of factual questions would be inconsistent with the purposes of the compulsory arbitration provision of that section, namely, avoiding congestion of the courts with

piecemeal litigation and leveling the playing field by avoiding the risks that insurers would use their superior economic resources by subjecting contested claims for coverage to undue litigation. To subject factual findings made by arbitrators ... to de novo review by the court would, in many cases, make those proceedings merely way stations to the courts, and would thereby create the very risks that the compulsory arbitration provision was designed to avoid.

*Id.* We similarly have noted that the No Fault Insurance Act seeks to reduce tort litigation, and that arbitration serves that end.[14] We conclude that State Farm has not been deprived of its right of access under section 10-4-708(1.5).[15]

## II.

State Farm contends that section 10-4-708(1.5), 4A C.R.S. (1990 Supp.), violates the parties' rights to a jury trial as guaranteed by section 23 of Article II of the Colorado Constitution, and by Rule 38 of the Colorado Rules of Civil Procedure.[16] State Farm relies on our holding in *Firelock* that the Mandatory Arbitration Act did not violate parties' rights to trial by jury because it provided *de novo* review in the district court. *Firelock Inc. v. District Court*, 776 P.2d 1090, 1097 (Colo.1989).

In *Firelock*, we recognized that "trial by a jury in a civil action is not a matter of right under the Colorado Constitution." *Id.* C.R.C.P. 38 provides a right to trial by jury, however, in actions where money is claimed due on contract. Like all rules of civil procedure, C.R.C.P. 38 does not always apply to civil actions; it is subject to the limitations set out in C.R.C.P. 81(a),

**14.** *See Baumgart v. Kentucky Farm Bureau Mut. Ins. Co.*, 199 Colo. 330, 332, 607 P.2d 1002, 1003 (1980); *State Farm Mut. Auto. Ins. Co. v. Cabs, Inc.*, 751 P.2d 61, 65 n. 5 (Colo.1988).

**15.** State Farm did not, in either action, raise the issue of *quid pro quo*. The Connecticut Supreme Court, however, considered and rejected a *quid pro quo* challenge in *Chmielewski v. Aetna Casualty and Surety Co.*, 218 Conn. 646, 591 A.2d 101, 111–12 (Conn.1991). Based on the "safeguards surrounding the arbitration process" and "the aggregate benefits associated

with compulsory arbitration," the court found that the judicial review available to the parties provided a reasonable alternative to remedies available for common-law breach of contract. *Id.*

**16.** Section 23 of Article II provides, in pertinent part, that "[t]he right of trial by jury shall remain inviolate in criminal cases; but a jury in civil cases in all courts ... may consist of less than twelve persons, as may be prescribed by law."

which provides that "[t]hese rules do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute."

"In interpreting C.R.C.P. 81(a), we have held that the rules of civil procedure do not apply where there is a special statutory proceeding which sets forth remedies (and the rules of civil procedure are inconsistent or in conflict therewith)." *State Farm Mut. Auto. Ins. Co. v. Cabs, Inc.*, 751 P.2d 61, 65 (Colo.1988) (citing *Brown v. Hansen*, 177 Colo. 39, 493 P.2d 1086 (1972); *City of Westminster v. District Court*, 167 Colo. 263, 447 P.2d 537 (1968); *Wright v. Tinsley*, 148 Colo. 258, 365 P.2d 691 (1961)). In *Cabs, Inc.*, we determined that arbitration under the Uniform Arbitration Act is a special statutory proceeding. 751 P.2d at 65. We found that the Uniform Arbitration Act was made applicable, by statute, to disputes between insurance companies regarding reimbursement and that the rules of civil procedure generally did not apply. *Id.* at 64–65.

In the present case, section 10–4–708(1.5) dictates that disputes under the No Fault Act shall proceed to binding arbitration pursuant to the Uniform Arbitration Act. Since the Uniform Arbitration Act is a special statutory proceeding within the meaning of C.R.C.P. 81(a), it follows that State Farm does not have a right to a trial by jury under C.R.C.P. 38 for its disputes. We conclude that State Farm has not been deprived of any right to trial by jury.

### III.

State Farm contends that section 10–4–708(1.5), 4A C.R.S. (1990 Supp.), imposes arbitration without its consent, in violation of Article XVIII, section 3, of the Colorado Constitution. We disagree.

Section 3 of Article XVIII provides as follows:

It shall be the duty of the general assembly to pass such laws as may be necessary and proper to decide differences by arbitrators, to be appointed by mutual agreement of the parties to any controversy who may choose that mode of adjustment. The powers and duties of such arbitrators shall be as prescribed by law.

State Farm cites *In re Bill Relating to Compulsory Arbitration*, 9 Colo. 629, 21 P. 474 (1886), where we were called on to review "A Bill for an Act to provide for the amicable adjustment of grievances and disputes that may arise between employers and employees, and to authorize the creation of a Board of Arbitration." In a per curiam opinion, we stated "that section 3, article XVIII, neither contemplates nor admits of a law providing for the compulsory submission of differences to arbitration. A submission of differences to the decision of arbitrators must be by mutual agreement of the parties to the controversy." *Id.* at 630, 21 P. at 475. State Farm relies on this language as sole support for its contention that the General Assembly impermissibly imposed arbitration on resolution of their dispute under section 10–4–708(1.5). We disagree.

Section 3 of Article XVIII does not expressly prohibit mandatory, binding arbitration. We have previously concluded that section 3 of Article XVIII did not prohibit the General Assembly from requiring parties to submit their disputes to nonbinding arbitration in all civil actions under the Mandatory Arbitration Act. *Firelock Inc. v. District Court*, 776 P.2d 1090, 1100 (Colo.1989).

Further, the provisions of the No Fault Act are incorporated into insurance policies written in Colorado. *Marquez v. Prudential Property & Casualty Ins. Co.*, 620 P.2d 29, 33 (Colo.1980). State Farm, thus, when writing or renewing insurance contracts from January 1, 1990, through July 1, 1991, incorporated the provisions of section 10–4–708(1.5) into its policies as a matter of law. Both insurance policies contain automatic renewal clauses.[17] State Farm

---

**17.** Broadnax's policy provided as follows:

 **4. Renewal.**

Unless within 59 days of the policy effective date, we mail or deliver a notice of cancellation to *you,* we agree:

did not dispute that the policies were not renewed in 1990. We cannot conclude that State Farm did not consent to mandatory arbitration of disputes pursuant to section 10–4–708(1.5).

We have observed that "[a]rbitration provides an efficient, convenient alternative to litigation," *Cabs, Inc.*, 751 P.2d at 65 n. 5, and "it has long been the policy of this state to foster and encourage the use of arbitration as a method of dispute resolution." *Judd Constr. Co. v. Evans Joint Venture*, 642 P.2d 922, 924 (Colo.1982) (citing *Sandefer v. District Court*, 635 P.2d 547 (Colo.1981), *overruled on other grounds, Sager v. District Court*, 698 P.2d 250 (Colo.1985); *Columbine Valley Constr. Co. v. Board of Directors*, 626 P.2d 686 (Colo.1981); *Ezell v. Rocky Mountain Bean & Elevator Co.*, 76 Colo. 409, 232 P. 680 (1925); and Colo. Const. art. XVIII, § 3).

We again note that one of the General Assembly's primary purposes in passing the No Fault Act was "to reduce the amount of tort litigation arising out of automobile accidents," *Baumgart v. Kentucky Farm Bureau Mut. Ins. Co.*, 199. Colo. 330, 332, 607 P.2d 1002, 1003 (1980), and to provide prompt resolution of disputed payments. Were we to adopt State Farm's position and rely solely on an opinion issued in 1886, we would be required to overlook both the current demands on the Colorado judicial system and the need for prompt payment of personal injury protection benefits that we have acknowledged when encouraging the use of arbitration as a method of dispute resolution. We decline to take that approach. Accordingly, we find that section 10–4–708(1.5) does not contravene section 3 of Article XVIII.

IV.

■ State Farm contends that section 10–4–708(1.5), 4A C.R.S. (1990 Supp.), impairs its existing contract rights in violation of Article II, section 11, of the Colorado Constitution. We disagree.

Section 11 of Article II provides that "[n]o ... law impairing the obligation of contracts ... shall be passed by the general assembly." State Farm contends that section 10–4–708(1.5) violates this provision because the insurance contracts at issue were entered into before the General Assembly changed the statutory scheme for resolution of payment disputes.

As State Farm correctly notes, section 11 of Article II prohibits legislation that applies retroactively. *See, e.g., Van Sickle v. Boyes*, 797 P.2d 1267, 1270–71 (Colo.1990); *Martin v. Board of Assessment Appeals*, 707 P.2d 348, 351 (Colo.1985). There is, however, no retroactive application in this case. The enacting legislation in this case provides that "[s]ections 1 and 3 of this act shall take effect January 1, 1990, and shall apply to insurance policies that are delivered or issued for delivery or renewal on or after said date." Act approved June 1, 1989, ch. 82, sec. 6, 1989 Colo.Sess.Laws 461. Both policies contained renewal clauses, and the policies were in force between January 1, 1990, and July 1, 1991. The policies thus fell within the prospective application of section 10–4–708(1.5). State Farm's rights under the contract were not impaired.

---

a. to continue it in force until the end of the current policy period; and

b. to renew the policy for the next policy period at the rates then in effect unless we mail to *you* written notice of our intention not to renew. The notice will be mailed to *your* last known address at least 30 days before the end of the current policy period. The mailing of it shall be sufficient proof of notice.

These agreements to continue and renew are void:

a. if *you* fail to pay the premium when due; or

b. if any of the following:

(1) *you*,

(2) *your spouse,*

(3) any *relative,* or

(4) any other *person* who usually drives *your car* have had his or her driver's license under suspension or revocation or have been convicted of driving without having a valid driver's license during the 180 days just before the effective date of the policy or during the policy period.

(Emphasis in original.)

The policy under which Gaal was entitled to personal injury protection benefits is identical to Broadnax's policy.

## V.

██ State Farm contends that section 10–4–708(1.5), 4A C.R.S. (1990 Supp.), violates its right to equal protection of the laws because the section imposes a restriction of the fundamental right of access to courts. State Farm further contends that a strict scrutiny standard of review must be applied since a fundamental right is involved.[18]

We do not find a violation of State Farm's right to equal protection of the laws under section 10–4–708(1.5). As previously discussed, we did not find that State Farm's right of access to courts was unreasonably restrained. In the absence of a fundamental right, we will apply a rational basis test to equal protection challenges. *Tassian v. People*, 731 P.2d 672, 675 (Colo.1987).

██ Under the rational basis inquiry, statutory classifications must be rationally related to a legitimate state interest. *Id.* Additionally, statutes analyzed under the rational basis test are presumed constitutional. *Id.* The party challenging the statute must prove its unconstitutionality beyond a reasonable doubt. *Id.*

We have already recognized the state's interest in reducing tort litigation arising out of automobile accidents and in prompt payment of personal injury protection benefits. *Baumgart v. Kentucky Farm Bureau Mut. Ins. Co.*, 199 Colo. 330, 332, 607 P.2d 1002, 1003; § 10–4–708, 4A C.R.S. (1990 Supp.). This state prefers arbitration as a method for resolving disputes because it "promotes quicker resolution of disputes by providing an expedited opportunity for the parties to present their cases before an unbiased third party." *Firelock Inc. v. District Court*, 776 P.2d 1090, 1099 (1989). By promoting quicker resolution of disputes, arbitration thus reduces the parties' costs. *Id.* Section 10–4–708(1.5)'s dispute resolution scheme is rationally related to legitimate interests in expediting dispute resolution, reducing parties' costs, and securing prompt payment of benefits. In *Firelock*, we rejected an equal protection

challenge to the Mandatory Arbitration Act. *Id.* We said that

> [w]hen the governmental interest served by arbitration is considered in light of the burden placed on the parties, we have no trouble concluding that the [Mandatory Arbitration] Act promotes a legitimate governmental interest and the procedures created by the [Mandatory Arbitration] Act are reasonably related to that interest.

We reject State Farm's equal protection challenge.

## VI.

██ Lastly, State Farm contends that section 10–4–708(1.5), 4A C.R.S. (1990 Supp.), impermissibly limits district court jurisdiction under section 9 of Article VI of the Colorado Constitution because there is no provision for meaningful review and because the arbitrator's decision is binding on all parties. We disagree.

Section 9 of Article VI provides, in pertinent part, that

> [t]he district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein, and shall have such appellate jurisdiction as may be prescribed by law.

Again, State Farm relies on our decision in *Firelock Inc. v. District Court*, 776 P.2d 1090, 1100 (Colo.1989), in support of its argument. In *Firelock*, we did not find that the Mandatory Arbitration Act violated section 9 of Article VI on the grounds that "arbitrators do not perform a judicial function because they do not possess the final authority to render and enforce a judgment" and because the decisions at issue in *Firelock* were non-binding. *Id.*, 776 P.2d at 1094.

Under the scheme contemplated by section 10–4–708(1.5) and the Uniform Arbitration Act, arbitrators do not have authority to enforce their own decisions, and parties must apply to the courts for confirmation of arbitrators' awards. § 13–22–213, 6A

---

**18.** State Farm did not articulate how § 10–4– 708(1.5) creates an impermissible classification.

C.R.S. (1987). Only district courts can enforce agreements and enter judgments on awards under the scheme. § 13–22–219, 6A C.R.S. (1987).

## VII.

With respect to *State Farm Mutual Automobile Insurance Co. v. Broadnax,* we affirm the district court's denial of State Farm's Petition to Stay Arbitration and Declaratory Judgment. With respect to *Gaal v. State Farm Mutual Automobile Insurance Co.,* we affirm the district court's denial of State Farm's Motion to Reconsider, and affirm the district court's entry of award.

KIRSHBAUM, J., dissents.

LOHR, J., joins in the dissent.

Justice KIRSHBAUM dissenting.

The majority states that "the requirements of due process of law" measure State Farm's right of access to the judicial process as established by article II, sections 3 and 6, of the Colorado Constitution and ultimately concludes that the compulsory arbitration provisions of section 10–4–708(1.5), 4A C.R.S. (1990 Supp.), satisfy that standard. Because legislation restricting the constitutionally guaranteed right of access to courts to protect property interests abridges a fundamental right, requiring heightened scrutiny analysis, and because the judicial review provisions of the statute fail to satisfy either strict scrutiny or due process standards, I respectfully dissent from the majority's conclusion.

## I

Questions concerning the scope and application of the access to courts provisions of article II, section 6, have been considered by this court in various contexts. We have found substantive and procedural innovations created by the General Assembly in our Workers' Compensation Act to be compatible with that section. *Curtiss v. GSX Corp. of Colorado,* 774 P.2d 873 (Colo.1989); *O'Quinn v. Walt Disney Prods., Inc.,* 177 Colo. 190, 493 P.2d 344 (1972). We have held that in special circumstances a trial court may enjoin an individual from instituting litigation *pro se* without violating right of access standards. *Board of County Comm'rs v. Winslow,* 706 P.2d 792 (Colo.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986); *People v. Spencer,* 185 Colo. 377, 524 P.2d 1084 (1974). Most recently in *Firelock v. District Court,* 776 P.2d 1090, 1096 (Colo.1989), we rejected a challenge based on article II, section 6, to provisions of the Colorado Mandatory Arbitration Act, §§ 13–2–401 to 409, 6A C.R.S. (1987), requiring compulsory arbitration of claims as a condition to the initiation of litigation of civil cases wherein the amount in controversy did not exceed the sum of $50,000. In view of the posture of those cases,[1] we were not required to articulate the nature of the right of access guarantee of article II, section 6, as it relates to the rights specified by article II, section 3. This case requires such analysis.

Article II, section 3, provides as follows:

**Inalienable rights.** All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness.

Colo. Const. art. II, § 3.

Article II, section 6, provides as follows:

---

1. In the Workers' Compensation Act cases, we recognized that the General Assembly may abolish common law or statutory rights, subject to constitutional protections, and for that reason persons do not acquire vested interests in particular remedies. *Curtiss v. GSX Corp. of Colorado,* 774 P.2d 873, 876 (Colo.1989); *O'Quinn v. Walt Disney Prods., Inc.,* 177 Colo. 190, 195, 493 P.2d 344, 346 (1972). In the *pro se* litigation cases we noted that constitutional rights occasionally conflicted, balanced particular plaintiffs' rights of access with the rights of others and of the public to fair and efficient judicial processes, and imposed the condition of legal representation on the right of access of those *pro se* plaintiffs. In *Firelock v. District Court,* 776 P.2d 1090, 1096 (Colo.1989), we held that a precondition of compulsory arbitration did not contravene article II, section 6, in view of the legislative determination to provide *de novo* adjudication. From that perspective, *Firelock* dealt with legislatively created delays of access rather than legislative abrogation of such right.

**Equality of justice.** Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay.

Colo. Const. art. II, § 6. Article II, section 3, enumerates specific rights guaranteed to all Coloradoans, one of which is the right to acquire, possess and protect property. It is not insignificant that the section captioned "inalienable rights" constitutes the first substantive provision of the Colorado bill of rights. *See Heath v. Sears, Roebuck & Co.*, 123 N.H. 512, 518, 464 A.2d 288, 294 (1983). Those who drafted our constitution obviously considered such "essential and inalienable" rights to be of profound, if not "fundamental," significance.

Article II, section 6, ensures that judicial forums will remain accessible for the provision of speedy remedies for injuries to "person, property or character." As the majority notes, a great majority of state constitutions contain similar language. Maj.Op. at 535. *See* Francis E. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am.U.L.Rev. 579, 615 n. 218 (1981). The presence of such a provision in our constitution, at so prominent a position in article II's catalog of rights, reflects a conscious decision by the framers of that document to depart significantly from the federal constitutional model as well as from constitutional models of several other states. It is precisely the absence of any such express guarantee in the United States Constitution that has engendered the broad due process tests characteristic of decisions of federal courts in right to access cases.

It must also be observed that the right to access provision was adopted even though a separate due process clause prohibiting unreasonable governmental deprivation of property rights was also incorporated into our bill of rights. Colo. Const., art. II, § 25. It seems reasonable to conclude that the framers intended some different, if not greater, protection of the property rights of individuals by the provisions of section 6 than were accorded by the provisions of section 25. *See Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907); *Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 675 (Utah 1985). As the Supreme Court stated in *Chambers,*

The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each State to the citizens of all other States to the precise extent that it is allowed to its own citizens.

207 U.S. at 148, 28 S.Ct. at 35.

Because the United States Constitution contains no express right of access guarantee, federal courts have by necessity addressed issues with respect to access to state courts in the framework of due process analysis. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Nordgren v. Milliken*, 762 F.2d 851 (10th Cir.1985); *McKay v. Hammock*, 730 F.2d 1367 (10th Cir.1984); *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir.1983); *Silver v. Cormier*, 529 F.2d 161 (10th Cir.1976). The right itself, however, is firmly rooted in the right of petition guaranteed by the First Amendment to the United States Constitution. *California Motor Transport Co. v. Trucking Unltd.*, 404 U.S. 508, 513, 92 S.Ct. 609, 613, 30 L.Ed.2d 642 (1972); *Nordgren*, 762 F.2d at 853; *Ryland*, 708 F.2d at 971. The right has also been defined as one of the privileges and immunities guaranteed to all citizens by article 4 of the United States Constitution. *Chambers*, 207 U.S. at 148, 28 S.Ct. at 35; *Nordgren*, 762 F.2d at 853; *Ryland*, 708 F.2d at 971. As the *Ryland* court stated, the right is "one of the fundamental rights protected by the Constitution." *Ryland*, 708 F.2d at 971. *See Boddie*, 401 U.S. at 378, 91 S.Ct. at 786; *McKay*, 730 F.2d at 1367; *Silver*, 529 F.2d at 163.

State courts assessing the significance of particular right to access provisions contained in their state constitutions have predictably described the characteristics of the

right itself in various ways. Some have emphasized its historical roots in sections of the Magna Carta. *Lankford v. Sullivan, Long & Hagerty,* 416 So.2d 996, 999 (Ala.1982); *State ex rel. Cardinal Glennon Mem. Hosp. v. Gaertner,* 583 S.W.2d 107, 110 (Mo.1979). In a thorough and thoughtful opinion declaring a portion of a statute of repose for products liability cases to be violative of state constitutional open access guarantees, the Utah Supreme Court articulated a two-part test seeking to balance the legislative authority to alter rights and remedies with the fundamental guarantee of access to courts contained in Utah's constitution. *Berry,* 717 P.2d at 680.

I find persuasive those decisions that conclude that right to access guarantees must be considered in relationship to the significance of the right advanced by the party seeking such access. *See Wayne v. Tennessee Valley Auth.,* 730 F.2d 392, 403 (5th Cir.1984); *Woods v. Holy Cross Hosp.,* 591 F.2d 1164, 1173 n. 16 (5th Cir.1979). If the underlying right is a fundamental right, the right of access itself must be fundamental. Such analysis requires careful evaluation of issues and facts on a case-by-case basis. However, it rejects the conclusion that the right of access guarantee is merely a due process guarantee—a conclusion that in this jurisdiction ignores the separate due process guarantee provided by our constitution and tends to reduce the language of article II, section 6, to a mere statement of principle. That analytical framework also avoids many of the problems perceived to result from a conclusion that the right of access is in all contexts fundamental.

In the context of this case, the interest advanced by State Farm—the right to protect its property interests under particular contracts—must be deemed one of those fundamental rights secured by article II, section 3, of the Colorado Constitution. We have recently noted that at least some of the inalienable rights enumerated in that section are fundamental in nature. *See People in re J.M.,* 768 P.2d 219, 221 (Colo. 1989). Surely the right to protect one's property interests from conduct by private parties allegedly appropriating those interests is fundamental to our concept of ordered liberty. The majority's contrary assumption ignores the language and purpose of article II, section 3.

Application of strict scrutiny analysis to the circumstances of this case requires the conclusion that the compulsory arbitration provisions of section 10–40–708(1.5), 4A C.R.S. (1990 Supp.), violate State Farm's fundamental right of access to the courts for the protection of its property interests. The primary justification advanced for the adoption of these compulsory arbitration provisions is the legislative goal of reducing tort litigation. Maj. Op. at 537. That policy is not furthered through legislation prohibiting a person alleging a deprivation of property interests by conduct of private parties from pursuing appropriate judicial remedies.[2] No other justification appearing of record, the provisions cannot stand.

## II

Even if the right to protect property interests by access to courts secured by our constitution is not accorded fundamental status, application of due process standards to the provisions of section 10–4–708(1.5) requires the conclusion that the judicial review provisions contained therein are constitutionally inadequate.

Because the General Assembly has authority to alter established rights and remedies, arguments premised on access to courts provisions are unpersuasive to the extent they are based on a vested rights analysis. *Curtiss v. GSX Corp. of Colorado,* 774 P.2d 873 (Colo.1989). This legislative authority is not absolute, however; it must be exercised within constitutional constraints, including the limitations established by article II, section 6. Assuming

---

2. The fact that State Farm's substantive property rights are defined by the No Fault Act is immaterial. The General Assembly did not abolish contract remedies by this legislation; to the contrary, it affirmed the availability of that remedy and simply directed that it be submitted to arbitration rather than to the judicial process.

that the minimal rational relationship standard of due process analysis is applicable, the determination of whether a particular statutory scheme limiting access to the courts is rationally related to a legitimate legislative purpose requires examination of the government interests involved and the procedural alternatives provided, as well as the significance of the affected private interests. *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). At a minimum, the legislation must provide the litigant with a meaningful opportunity to obtain independent judicial analysis of those interests at a meaningful stage of the dispute resolving process. *Id.; see Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950); *Crowell v. Benson*, 285 U.S. 22, 45–57, 52 S.Ct. 285, 290–95, 76 L.Ed. 598 (1932).

State Farm asserts that the judicial review provisions of section 10–40–708(1.5), 4A C.R.S. (1990 Supp.), are inadequate and not rationally related to the legislative purpose underlying the Act. The majority concludes that State Farm is not deprived of access to the judicial process because the statutory scheme provides it with the right to a hearing at which evidence may be presented and defenses raised and "the right to resort to the formal judicial system should it find an arbitrator's order adverse to its interest." Maj.Op. at 537. In my view, these statements should initiate rather than end our inquiry.

The right to participate in an arbitration proceeding is not a right to participate in a judicial proceeding. At a minimum, due process analysis requires that abolition of the traditional judicial forum be justified on a *quid pro quo* basis. *See Chmielewski v. Aetna Cas. and Sur. Co.*, 218 Conn. 646, 664, 591 A.2d 101, 111 (1991). As has been noted, the General Assembly did not abolish common law contract remedies by adopting section 10–40–708(1.5). It rather directed disputes about the availability of such remedy to arbitration processes, thus prohibiting determination of those traditional common-law claims by trial. To the extent the reciprocal benefit is the elimination of tort claims, there is no *quid pro quo*

at all. To the extent the reciprocal benefit is a reduction in delay of payments to insureds, it is far from clear that the procedures established by section 10–40–708(1.5) will substantially achieve such result.

Assuming the constitutional validity of the General Assembly's decision to require submission of common-law contract claims to compulsory arbitration, thus insulating such claims from adversarial examination of testimony, exhibits and witness credibility under the procedural and evidentiary rules associated with the trial process, such assumption does not answer the serious questions raised by the legislative decision to restrict judicial review of such proceedings to the narrow standards established by the Uniform Arbitration Act, §§ 13–22–201 to –223, 6A C.R.S. (1987) (the Uniform Act). Those provisions are wholly inadequate to protect the important, if not fundamental, right here involved.

The Uniform Act contains stringent limitations on the scope of judicial review of initial arbitration awards. A reviewing court has authority to vacate an arbitration award only if the award was procured by "corruption, fraud, or other undue means ..." § 13–22–214(1)(a)(I); if there is evidence that a party's rights were prejudiced because of corruption or misconduct or lack of impartiality by one or more arbitrators, § 13–22–214(1)(a)(II); if the arbitrators or one of them acted in excess of the powers granted by the Uniform Act, § 13–22–214(1)(a)(III); if the arbitrators failed to postpone a hearing or to hear relevant evidence, to the prejudice of parties, § 13–22–214(1)(a)(IV); or, in specified circumstances, if there was no arbitration agreement, § 13–22–214(1)(a)(V). A reviewing court may modify or correct an award only if the award contains miscalculations of figures or mistakes in descriptions, § 13–22–215(1)(a); if it was made upon a matter not submitted to arbitration and the award may be corrected without affecting the merits of the decision appropriately rendered, § 13–22–215(1)(b); or if the award is "imperfect in a matter of form, not affecting the merits of the controversy," § 13–22–215(1)(c).

The Uniform Act thus does not permit the reviewing court to review the sufficien-

cy of the evidence or the propriety of procedural rulings. Furthermore, the reviewing court is for all practical purposes precluded from reviewing evidentiary rulings, and in the absence of specific contractual directions may not vacate an arbitration award even if the arbitrator misapplied applicable rules of law. *Cabus v. Dairyland Ins. Co.*, 656 P.2d 54 (Colo.App.1982); *Matter of J.M. Weller Assoc., Inc.*, 169 A.D.2d 958, 564 N.Y.S.2d 854 (N.Y.App.Div.1991); *Morganti, Inc. v. Boehringer Ingelheim, Inc.*, 20 Conn.App. 67, 563 A.2d 1055 (1989); *Woodard v. Southern Cal. Permanente Med. Group*, 171 Cal.App.3d 656, 217 Cal. Rptr. 514 (1985). In view of the absence of initial judicial evaluation of evidence and issues and the presence of the inalienable, if not fundamental, right to have meaningful access to the judicial process to resolve contractual disputes involving private property interests, this extraordinarily limited right to judicial review is neither meaningful nor reasonable.

The majority quotes language from two federal circuit court of appeals decisions in support of its conclusion that the judicial review provisions of section 10–4–708(1.5) satisfy the provisions of our constitutional guarantee of the right of access to courts. Maj.Op. at 537. Neither the quotations nor the opinions from which they are excerpted are persuasive here.

*Republic Industries, Inc. v. Teamsters Joint Council No. 83*, 718 F.2d 628 (4th Cir.1983), raised the narrow question of whether 29 U.S.C. § 1461(e)(2)(A) of the 1980 Multiemployer Pension Plan Amendments Act, 29 U.S.C. §§ 1381–1461 (the 1980 Act) violated various constitutional safeguards. The court upheld the constitutionality of the statutory scheme, rejecting a contrary conclusion reached by the Ninth Circuit Court of Appeals in *Shelter Framing Corp. v. Pension Benefit Guaranty Corp.*, 705 F.2d 1502 (9th Cir.1983). The sweeping observations appearing in *Republic Industries, Inc.*, as quoted by the majority, were prompted by the plaintiff's broad assertion that "compulsory arbitration is invalid." *Republic Industries, Inc.*, 718 F.2d at 639. The plaintiff therein asserted that the judicial review provisions of

the federal statutory scheme did not satisfy due process fairness standards; it did not assert an access to state court argument. Furthermore, although the court upheld the compulsory arbitration provisions of the 1980 Act, it did so in large measure because it construed the judicial review provisions articulated by that statute to permit review of evidentiary as well as legal rulings of the arbitrator, in sharp contrast to the narrow review available in arbitration proceedings subject to the provisions of 9 U.S.C. §§ 1–15. *Id.* at 641.

*Textile Workers Pension Fund v. Standard Dye & Finishing Co.*, 725 F.2d 843 (2d Cir.1984), also required consideration of the judicial review provisions of 9 U.S.C. § 1461(e)(2)(A) of the 1980 Act. The court rejected the plaintiff's argument that the compulsory arbitration procedures of the 1980 Act violated its right of access to the courts by citing *Republic Industries, Inc.* for the conclusion that the relatively broad judicial review provisions of the 1980 Act assured the plaintiff of meaningful access to the courts. Both cases turned on the availability of judicial review provisions that permitted far greater judicial evaluation of arbitration awards than is permitted by our Uniform Act.

At the very least, the right of access provisions of the Colorado Constitution require the availability of meaningful judicial review of non-judicial determinations of private disputes over property interests. In my view, section 10–40–708(1.5) does not provide such meaningful review of State Farm's property interests.

### III

For the foregoing reasons, I find the compulsory arbitration provisions of section 10–4–708(1.5), 4A C.R.S. (1990 Supp.), violative of sections 3 and 6, article II, of the Colorado Constitution. I therefore respectfully dissent from the contrary conclusion reached by the majority.

LOHR, J., joins in this dissent.